198

Yvonne McCain et al., on Behalf of Themselves and Their Children and All Others Similarly Situated, Respondents-Appellants, Donna Keyes et al., Intervenors-Respondents-Appellants, Carolyn Lee et al., Proposed Intervenors-Appellants, and Linda James et al., on Behalf of Themselves and Their Children and All Others Similarly Situated, Intervenors-Appellants, v Edward I. Koch, as Mayor of the City of New York, et al., Appellants-Respondents, et al., Defendant.

In the Matter of Sharon Fulton et al., on Behalf of Themselves and Their Children and All Others Similarly Situated, Respondents, and Patricia Cossley, Intervenor-Respondent, v James Krauskopf, as Commissioner of the Human Resources Administration of the City of New York, and of the New York City Department of Social Services, et al., Appellants.

First Department, May 13, 1986

## APPEARANCES OF COUNSEL

*Ann Moynihan* and *Arthur J. Fried* of counsel *(Steven Banks, John E. Kirklin, Shawn P. Leary, Stephen J. Loffredo,*

*Foster S. Maer, Scott A. Rosenberg, Alan Rosner* and *Marcella Silverman* with them on the brief; and *Kalman Finkel,* attorneys), for respondents-appellants (other than Barbara Downs); intervenors-respondents-appellants; proposed intervenors-appellants; and petitioners-respondents.

*Lee Bantle* of counsel *(Debevoise & Plimpton,* attorneys), for Barbara Downs, respondent-appellant and as co-counsel for the remaining respondents-appellants; intervenors-respondents-appellants; proposed intervenors-appellants; and petitioners-respondents.

*Samuel J. Silverman* of counsel *(Jay Greenfield, Anne Louise Oates* and *Todd Stern* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison* and *Robert M. Hayes* and *Nadine Strossen,* representing, respectively, the Coalition for the Homeless and the Washington Square Legal Services, Inc., as attorneys), for intervenors-appellants.

*Barry P. Schwartz* of counsel *(Fay Leoussis* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for municipal appellants.

*Lillian Z. Cohen* of counsel *(Robert Abrams, Attorney-General,* attorney), for Cesar Perales, as Commissioner of the New York State Department of Social Services.

### OPINION OF THE COURT

ROSENBERGER, J.

On these consolidated appeals we are called upon to consider whether homeless families with children are entitled to emergency shelter under the guarantees of equal protection of the New York Constitution, the Federal Constitution, and the State Plan for Emergency Assistance to Families with Needy Children. The issues arise in the context of appeals and cross appeals from four orders entered by Special Term, New York County, in *McCain v Koch* and from an order entered in *Matter of Fulton v Krauskopf.*

#### STATUTORY FRAMEWORK AND FACTUAL BACKGROUND

Under the New York Social Services Law, policy and rulemaking authority are concentrated in the State Department of Social Services (State DSS). *(See,* Social Services Law § 20.) Primary responsibility for providing assistance and care, and for day-to-day administration of the manifold public assistance

programs devolves upon the local social services departments. *(See,* Social Services Law § 62.)

New York participates in the Federally funded program for Aid to Families with Dependent Children (AFDC). In conjunction with the AFDC program, New York has elected to participate in the program for Emergency Assistance to Needy Families with Children (EAF). Additional emergency and short-term aid are available under State-funded public assistance programs such as Home Relief (HR) and Emergency Assistance for Aged, Blind and Disabled Persons. (Social Services Law §§ 157, 300.) The State DSS monitors the local services departments, and when it discovers a failure to adhere to binding policies, directives, State regulations, or Federal regulations in the AFDC and EAF programs, it may withhold or deny State reimbursement or require corrective action. (Social Services Law § 20; 45 CFR 206.10 [a] [12].)

The City Department of Social Services (City DSS) operates Income Maintenance Centers (IMCs) which administer, *inter alia,* the AFDC, EAF and HR programs for client-recipients on a daily basis, and place families who have requested emergency shelter. The City DSS operates an Emergency Assistance Unit (EAU) in each borough except Staten Island. Families who seek emergency shelter during a weekend, or who have not received referrals to temporary housing from an IMC at the end of the business day, are referred to an EAU for placement. The City DSS attempts to locate hotel accommodations for homeless families. It provides shelter allowances for such accommodations for six months, and thereafter, for so long as the client seeks permanent housing. It receives State reimbursement for these payments for six months and thereafter, unless the average length of stay in such accommodations exceeds six months. (18 NYCRR 352.3 [f].) More recently the City DSS has sought space for clients in three family shelters operated by nonprofit sponsors under contract with the City.

Families who are without shelter because of damage to their homes or because of vacate orders are initially assisted by the Bureau of Emergency Housing Services within the City Department of Housing, Preservation and Development (HPD). HPD provides emergency shelter, makes referrals to permanent housing in the area of choice, and pays relocation expenses. It transfers those families it has been unable to rehouse to the City DSS for assistance.

Plaintiff Yvonne McCain and members of 13 other homeless families with children commenced an action against the City, the State and City Commissioners of Social Services, and various City officials charged with the administration of programs to assist homeless families in locating housing, seeking a declaratory judgment, injunctive relief, and class certification. They allege in their amended complaint, *inter alia,* that the State and municipal defendants arbitrarily deny them adequate emergency shelter without written notice and an opportunity for a hearing, and shuttle them between local welfare offices, IMCs and EAUs in cycles lasting for days, sometimes weeks at a time. Plaintiffs also claim that defendants lodge them overnight in the EAUs, having them sleep under fluorescent lights on floors, formica counter tops, desks, and chairs and relocate them in squalid and dangerous hotels, located at considerable distances from their children's schools.

The following poignant scenarios illustrate plaintiffs' allegations that defendants arbitrarily deny adequate emergency shelter to homeless families with children. Plaintiff William Sanders, his wife Carolyn, and their two daughters, aged 10 and 13, became homeless in June 1982, when a fire destroyed their home and Mr. Sanders lost his job. The Sanders plaintiffs allege that City DSS denied their request for emergency shelter on March 26, 1983. Housing was later provided, but terminated on March 31, 1983, for no stated reason. Their AFDC benefits were discontinued on the ground that they lacked a permanent address.

Plaintiff Barbara Downs, a recipient of Social Security Survivor's benefits, and her two children left their apartment in December 1979 because of unsafe, unsanitary conditions. They allege that the City DSS terminated their shelter allowance grant of public assistance upon learning that they had moved in with relatives. When Ms. Downs reapplied for assistance, a social worker advised her to seek permanent housing, since the hotels were unsuitable for families.

In March 1983, plaintiff Patricia Rodak and her five-year-old daughter, AFDC recipients, became homeless as a result of their eviction for nonpayment of rent. The Rodak plaintiffs allege that the City DSS denied their request for emergency shelter on March 18 and March 24, 1983.

Plaintiff Yvonne Perez and her three children, AFDC recipients, were also evicted from their apartment for nonpayment

of rent in November 1981. Ms. Perez alleges that she searched in vain for an apartment while living with a series of neighbors and friends for five months, until she finally requested emergency shelter. On April 25 and July 2, 1982, the IMC denied her requests. A friend sheltered two of her children from July 2 to July 4. Ms. Perez and her asthmatic six-year-old son spent the nights of July 2 and 3 sleeping on a Coney Island beach. She and her son slept on the ground in Sunset Park, Brooklyn, the night of July 4th.

The City DSS placed Yvonne McCain and three of her children at the Martinique Hotel in Manhattan. They have lived there since October 1983 in two rodent and bug-infested rooms, containing minimal furniture and four beds with dirty linen. The windows have no guardrails and there is an open electrical box in the hallway within easy reach of her children.

The City DSS referred plaintiffs Steven and Emily Moses and their eight children to rodent-infested three-room accommodations in the Martinique Hotel. The rooms had broken windows, six single beds, and no other furniture. Due to their repeated complaints, they were moved to slightly better rooms at the hotel, which had three twin beds, a double bed and one dresser. In early September, the Martinique refused to continue housing the Moses family. The City DSS then relocated them to the Granada Hotel in Brooklyn. Their accommodations at the Granada Hotel were insect and rodent-infested. The Moses children aged 2 to 12, share three twin beds with soiled mattresses and inadequate linen. During their six-month occupancy of the Granada, there have been approximately six fires and fire alarms have failed to ring although they ring on other occasions. Two of the Moses children reported having been threatened with a knife. Mr. Moses has witnessed muggings perpetrated with both guns and knives. Heat and hot water were so infrequent that their children were forced to sleep fully clothed on many nights and contracted colds. Indeed, their two-year-old daughter was hospitalized for pneumonia.

Proposed plaintiff-intervenor Valerie Frazier and her two children reside in similarly dangerous and squalid conditions at the Regent Hotel in Manhattan. They eat on the floor because there is no table.

Proposed plaintiff-intervenor Genell Salterwhite's two six-month-old infants sleep on the floor because they otherwise

crawl out of the bed and fall onto the floor. Her room at the Conca D'Oro Hotel in Staten Island has two double beds for two adults and six children.

In their amended complaint, plaintiffs McCain *et al.* request a declaration that defendants' failures to provide eligible homeless families with (1) safe, suitable, and adequate emergency housing; (2) relocation benefits; (3) school transportation allowances, and (4) notice and a hearing prior to termination of emergency shelter, violate the Federal and State Constitutions, statutes and regulations. Plaintiffs pray for an injunction requiring defendants, *inter alia,* to provide the aforementioned benefits and to "locate and make available additional emergency housing units within New York City so that all families in need of emergency housing obtain that housing in New York City immediately, and so that families can, where appropriate, be given emergency housing near their children's schools." Plaintiffs also seek to enjoin defendants from denying emergency housing to families in need of such housing and from placing such families in housing that is dangerous to the life, health, and safety of their children and which is inadequate to meet the family's needs.

### MATTER OF FULTON V KRAUSKOPF

Petitioners Sharon Fulton and four other members of homeless families, including petitioner Yvonne McCain, commenced a CPLR article 78 proceeding seeking class certification and a preliminary injunction requiring respondent Commissioners of the State and City DSS to provide emergency housing within the area where their minor children attend school or to provide transportation allowances based on actual costs for children and for their parents where necessary. Their petition alleges that the City DSS has failed to comply with State policy concerning school transportation allowances and that its refusal to provide such allowances deprives their children of their right to a free education.

### PROCEDURAL HISTORY AND DECISION AT SPECIAL TERM IN MCCAIN V KOCH

By an interim order dated June 20, 1983, Special Term (Greenfield, J.), directed the City DSS and HPD, when providing emergency housing for homeless families with children, to assure, insofar as practicable, that such housing meets specified minimal standards of health, safety and decency suitable

for young children, including placement in light of educational needs; to afford emergency shelter recipients with timely and adequate notice of any proposed termination, and a hearing; to designate an individual to facilitate implementation of the order; and required State and City DSS to provide public assistance, food stamps, and Medicaid benefits for which emergency shelter recipients are eligible without interruption, to the extent practicable.

On September 29, 1983, the Commissioner of the State DSS issued Administrative Directive 83 ADM-47, which largely incorporated the terms of the interim order and made them binding on a State-wide basis. It directs social services departments "to assist homeless persons in obtaining housing." The Administrative Directive also indicates that "[e]mergency housing must either be provided immediately if a homeless person is determined eligible or written notice must be given that no assistance will be provided where a homeless person is determined ineligible. A person who is determined ineligible shall be advised of the right to an expedited State Fair Hearing."

The State Commissioner also promulgated 18 NYCRR 352.3 (g) and (h). These provisions require local social services departments semiannually to inspect hotels and motels used for client referrals and verify that they meet certain enumerated standards. Referrals are prohibited to facilities not verified as meeting these criteria.

By decision, reported at 127 Misc 2d 23, and order entered June 27, 1984, Special Term (Greenfield, J.), granted a preliminary injunction to the extent of converting the interim order into a preliminary injunction. This is one of the five orders at issue on this appeal. Special Term found the case moot to the extent that the substance of the interim order had been codified in 18 NYCRR 352.3 (g) and (h). Without reaching the constitutional and statutory issues, except to note the absence of an explicit mandate, Justice Greenfield held (p 24) "once the defendants have undertaken to provide emergency shelter, whether for 30 days pursuant to AFDC or beyond, instead of providing direct cash grants", defendants must ensure that the shelter meets "minimal standards of cleanliness, warmth, space and rudimentary conveniences". The court invoked its equitable powers to compel compliance with reasonable minimum standards, reasoning (p 25) that the homeless as "interim wards of a governmental entity" are entitled to no less than convicted criminals. The court also held that the proce-

dural safeguards delineated in the interim order should be adhered to, citing *Matter of Jones v Berman* (37 NY2d 42, 56 [1975]). It rejected plaintiffs' requests for additional safeguards. The court framed the order in terms of class-wide relief, but determined that the action could not properly be maintained as a class action because the remaining issues, such as eligibility for relocation benefits, moving expenses, and storage fees, presented issues of law and fact which were not common to all members of the proposed class.

By separate decision and order, entered June 27, 1984, Special Term (Greenfield, J.), denied the City's motion to vacate the temporary restraining order which it had issued on March 22, 1984. The TRO prohibits the City from transferring the named plaintiffs from satisfactory facilities to an alternate housing location until reasonable notice and an opportunity to be heard are given.

By decision, dated August 3, 1984, and a third order entered November 9, 1984, Special Term (Greenfield, J.), denied the motion of plaintiffs Yvonne McCain *et al.* and proposed plaintiffs-intervenors Carolyn Lee *et al.* for intervention, class certification, and a preliminary injunction prohibiting defendants from placing any additional families in the three existing congregate or mass shelter facilities, barring the opening of any additional such facilities, and seeking to require the utilization of hotels or other housing accommodations providing privacy and meeting the minimal standards of the interim order.[1] Plaintiffs alleged that the mass shelters had substandard living conditions and caused their children psychological harm. In the alternative, plaintiffs requested an order directing limitation of the use of mass shelters to initial one-time placements not to exceed five days, implementation of a "screening system" for pregnant women and others whose mental or physical health would be adversely affected, as well as individuals with communicable disease, and the setting of certain minimal standards for mass shelters.

Special Term recognized that mass shelters are not conducive to privacy, increased the likelihood of the spread of infectious diseases and of deviant sexual behavior, and should be utilized only for short stays. Nevertheless, it declined to compel the closing of such shelters, stating: "However imper-

---

1. After Special Term issued its interim order, and State DSS reflected the order in State Administrative Directive 83 ADM-47, the City began utilizing "mass shelters" for emergency housing.

fect, mass shelters provide homeless families with an alternative to sleeping in the street". Justice Greenfield declined to close the Roberto Clemente facility on the ground that plaintiffs had failed to demonstrate clearly the reasons for its unacceptability to the State.

By order entered May 30, 1985, Special Term (Myers, J.), denied the motion of proposed plaintiffs-intervenors Linda James and Ronald Wright *et al.* for leave to intervene in *McCain v Koch,* and for a preliminary injunction barring the defendants from denying emergency shelter to eligible families.[2] In their complaint, James alleged that she had unsuccessfully requested emergency shelter on behalf of herself and her two children after their eviction in April 1985. She alleged that her family slept in the Brooklyn EAU office on three successive nights. Justice Myers deemed the motion to intervene as moot because the two proposed intervenors had been housed by the City. The court further declined to consider the motion for a preliminary injunction on the merits since Justice Greenfield had denied a prior motion for the same relief.

### DECISION AT SPECIAL TERM IN
### MATTER OF FULTON V KRAUSKOPF

By decision, reported at 127 Misc 2d 20, and order entered June 29, 1984, in *Matter of Fulton v Krauskopf,* Special Term (Greenfield, J.), issued a preliminary injunction directing respondents, the State and City Commissioners of DSS, to provide an allowance for actual school transportation costs on an individualized basis to homeless children and their parents. Special Term held that the $18 weekly travel allowance provided to parents as a matter of City policy was inadequate. Justice Greenfield granted class certification, holding that the numerical requirement was met by the estimated number of 2,500 families affected and, additionally, that the matter would be decided most appropriately pursuant to generally applicable principles. It denied the cross motion to dismiss, and ruled that the matter was not moot because of its "ongoing nature, and the lack of adequate general provision." Thereafter, respondents' application for leave to appeal to this court was granted, and the appeal was consolidated with the

---

2. Ronald Wright's prior motion to intervene in *Canaday v Koch* (608 F Supp 1460 [SDNY 1985]), a similar action, was denied, and that action was stayed pending disposition of this appeal by order and decision dated May 10, 1985.

appeals pending in *McCain v Koch.* Subsequently, a Justice of this court granted the motion by the City for leave to appeal from the order entered November 9, 1984, the motion by proposed plaintiffs-intervenors Linda James and Ronald Wright for an expedited appeal, and consolidated these appeals with the foregoing matters.

MCCAIN V KOCH

### 1. Right to Emergency Shelter

■ The threshold issue in *McCain v Koch* is whether homeless families with children are entitled to emergency shelter. We reverse Special Term's order of May 30, 1985, which denied proposed plaintiffs-intervenors Linda Jones and Ronald Wright's motion for intervention and for a preliminary injunction, seeking to bar the defendants from denying emergency shelter to eligible families. We cannot agree with Special Term's conclusion that the City's provision of emergency housing to the proposed intervenors mooted their claims. The questions presented are of public importance and significance, likely to recur and yet evade review. *(See, Matter of Jones v Berman,* 37 NY2d, at p 57.) We therefore grant a preliminary injunction barring the denial of emergency shelter to homeless families.

■ In our view, plaintiffs made the requisite showing of (1) a balancing of equities favoring such an injunction pendente lite, (2) risk of irreparable injury, and (3) a strong likelihood of success on the merits of their claims. (CPLR 6301; *see, Tucker v Toia,* 54 AD2d 322, 325 [4th Dept 1976]; *Albini v Solork Assoc.,* 37 AD2d 835 [2d Dept 1971].) Plaintiffs assert that defendants are obligated to provide emergency shelter to them under the EAF program, the State and Federal constitutional guarantees of equal protection, and NY Constitution, article XVII, § 1. The proposed intervenors assert that in the event a preliminary injunction is not granted, they will be forced to sleep on the floors, desks, and counter tops of IMCs and EAUs. The irreparable injury to be sustained by homeless families clearly outweighs the burden that providing temporary emergency shelter imposes upon defendants. Consideration of the public interest also strongly favors an injunction pending a final determination on the merits. In many instances, parents of children in homeless families lack employment and adequate support systems. The public interest is better served by having them housed, than by forcing them to find shelter and food that may be beyond their means to attain. *(See, Williams*

*v Barry,* 490 F Supp 941 [DDC 1980], *affd in part and vacated in part* 708 F2d 789 [DC Cir 1983].) Of course, final determination of the case will await a plenary hearing on the merits. *(Tucker v Toia, supra.)*

■ We believe that plaintiffs have a high probability of establishing that the City is mandated to provide emergency shelter to eligible families for 30 days in one 12-month period pursuant to the State Plan for EAF. Pursuant to 45 CFR 233.120 (a) (3), the State EAF Plan must specify the emergency needs that will be met and the methods that will be used in meeting those needs. New York has elected to provide the service of "securing family shelter" when necessary to cope with emergency situations. (Social Services Law § 350-j [3]; 18 NYCRR 372.4 [d].) We agree with Special Term to the extent that the State's participation in the EAF program obligates the City DSS, budgetary constraints notwithstanding, to secure the amount of emergency shelter necessary for homeless families found within the City's borders. In view of the dire and increasing shortage of available, decent low-income housing, any other interpretation of the term "securing" would render the State EAF Plan meaningless.

Plaintiffs also have a high probability of establishing that in failing to assure emergency shelter for all eligible homeless families, both the State and City DSS have violated the Social Security Act requirement of mandatory enforcement of the State Plan. (42 USC § 602 [a] [1]; *Koster v Webb,* 598 F Supp 1134, 1137 [EDNY 1983]; *see also, Barnes v Cohen,* 749 F2d 1009, 1019, n 6 [3d Cir 1984], *cert denied sub nom. Cohen v Betson,* — US —, 105 S Ct 2126 [1985]; *but see, Oberlander v Perales,* 740 F2d 116 [2d Cir 1984]; *Canaday v Koch,* 608 F Supp 1460, 1472.) Defendants' ad hoc, uneven practices and policy further violate 45 CFR 233.10 (a) (1), which provides that the State Plan may not exclude individuals "on an arbitrary or unreasonable basis, and must not result in inequitable treatment of individuals or groups in light of the provisions and purposes of the public assistance titles of the Social Security Act." *(See, Blum v Bacon,* 457 US 132 [1982].)

The City's contention that its duty to provide emergency assistance is limited to the provision of cash benefits and ancillary services, such as providing information and making inquiries as to the whereabouts of available temporary housing seems to violate Social Services Law § 350-j (3). That subdivision expressly states that emergency assistance shall be provided "when * * * necessary to avoid destitution or to

provide * * * living arrangements in a home". Assuming, arguendo, that subdivision (3) defines when, rather than how, assistance is to be provided, 18 NYCRR 372.4 (d) would nonetheless seem to impose upon the State and City DSS the duty of "securing family shelter" as a service during an emergency situation.

The municipal defendants' attempt to distinguish the "securing" and the "providing" of shelter is unavailing. The proposed distinction is, in our view, one without a difference. In electing to secure family shelter as an emergency service for 30 days per year, the State DSS and the Legislature could only have reasonably meant "secure" as synonymous with "provide". More troubling is the City's argument that a broad reading of the State EAF Plan to include a right to emergency shelter is inconsistent with the terms and purposes of the EAF program as discussed in *Quern v Mandley* (436 US 725 744 [1978].) However, in our view, *Quern* is distinguishable from the present case. Plaintiffs in *Quern* challenged the validity of Illinois State Plan for Emergency Assistance to Needy Families, which only provided emergency aid to families without shelter as a result of damage to their homes or court-ordered eviction other than for nonpayment of rent. The United States Supreme Court held that a State may define categorical eligibility for emergency assistance more narrowly than the Federal criteria. Clearly, *Quern* does not stand for the proposition that defendants may arbitrarily enforce or ignore the express provisions of the State Plan, particularly since AFDC families are often affected. *(See, Blum v Bacon, supra* [New York's EAF Plan which denied AFDC recipients certain emergency benefits available to non-AFDC recipient families conflicted with a Federal regulation and violated the supremacy clause].) As the State EAF Plan does not resolve plaintiffs' claim of entitlement to emergency shelter beyond 30 days, we find it necessary to reach plaintiffs' constitutional claims.

█ The City makes emergency shelter available to homeless single men, who meet the eligibility criteria of the HR program, or who suffer a physical or mental dysfunction, pursuant to the consent judgment in *Callahan v Carey* (Sup Ct, NY County, Index No. 42582/79) entered on or about August 26, 1981. The consent judgment also established minimum qualitative operating standards for shelters. *(See, City of New York v Blum,* 121 Misc 2d 982, 986 [Sup Ct, NY County 1982].) Under the equal protection guarantees of the State and Fed-

eral Constitutions, "any classification which denies to one class of needy persons public assistance which is available to all others, cannot be justified unless it is rationally related to a legitimate State interest". *(Matter of Lee v Smith,* 43 NY2d 453, 460 [1977]; *see, United States Dept. of Agric. v Moreno,* 413 US 528 [1973].) There is no apparent reasonable basis for the City's denial of emergency shelter to plaintiffs. This court's recent decision in *Eldredge v Koch* (98 AD2d 675 [1st Dept 1983], *revg on other grounds* 118 Misc 2d 163 [Sup Ct, NY County 1983]) is illustrative. There we upheld the constitutional right of homeless single women to shelter equal to that provided for homeless men under the *Callahan* decree. It is axiomatic that children need stable, secure homes and are among those least able to bear the hardships of poverty and destitution. Public policy strongly favors assistance to families with destitute children. *(See,* Social Services Law § 131 [3]; § 397 [1] [b]; *see generally,* Social Services Law art 6.) Indeed, the needs of plaintiffs are greater than those of single adults. *(Matter of Lee v Smith, supra,* at pp 460-461.) Defendants' less than equal treatment of plaintiffs is plainly irrational.

*Sundheimer v Blum* (79 AD2d 512 [1st Dept 1980], *affd on memorandum below* 55 NY2d 756 [1981]), cited by the City, is not to the contrary. In *Sundheimer,* the issue was whether the equal protection clause required the State to extend family care provider payments to parents of all disabled children, where the State had extended such payments to parents in the so-called Willowbrook case. *(New York State Assn. for Retarded Children v Rockefeller,* 357 F Supp 752 [EDNY 1973].) This court held that there was a rational basis for distinguishing Willowbrook parents from others; Willowbrook was subject to a consent decree, a central requirement of which was an expedited, massive reduction in the patient population; and the need to give Willowbrook parents an incentive to remove their children. *Sundheimer* is also inapposite in view of the small size of the class under the consent decree in Willowbrook and the dimension of the class to which it was proposed to extend benefits. The class of homeless single men under the consent decree in *Callahan v Carey (supra)* is much more comparable to the proposed class here, approximately 2,500 homeless families with 2 or 3 children per family, than the parents of Willowbrook patients and the proposed class in *Sundheimer.*

It is also likely that plaintiffs will succeed on their claim that NY Constitution article XVII obligates defendants to

provide emergency shelter for homeless families. New York State has made the care of its needy residents a constitutional mandate. NY Constitution, article XVII, § 1 provides: "The aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine." The framers of the State Constitution intended article XVII to require the State to take positive steps to assist the needy, rather than to voice aspiration towards ideal social policy. In moving the adoption of article XVII at the 1938 New York Constitutional Convention, Edward F. Corsi, Chairman of the Committee on Social Welfare, said: "Here are words which set forth a definite policy of government, a concrete social obligation which no court may ever misread. By this section, the committee hopes to achieve two purposes: First: to remove from the area of constitutional doubt the responsibility of the State to those who must look to society for the bare necessities of life; and, secondly, to set down explicitly in our basic law a much needed definition of the relationship of the people to their government." (III Revised Record of the Constitutional Convention 2126 [1938], quoted in Note, *Establishing A Right to Shelter For the Homeless,* 50 Brooklyn L Rev 939, 944-945, n 27 [1984].)

The tenet that the provision for assistance is a positive duty, not a matter of legislative grace, is well expressed in *Tucker v Toia* (43 NY2d 1 [1977]) in circumstances analogous to those in the present case. In *Tucker,* the Court of Appeals noted: "Although our Constitution provides the Legislature with discretion in determining the means by which [the duty] is to be effectuated, in determining the amount of aid, and in classifying recipients and defining the term 'needy', it unequivocally prevents the Legislature from simply refusing to aid those whom it has classified as needy." *(Tucker v Toia, supra,* at p 8.) There, the court held violative of article XVII, § 1 a statute pursuant to which emancipated single mothers under age 21 were denied HR benefits until they had commenced support proceedings against their parents or legally responsible relatives and obtained orders of disposition.

█ It is uncontroverted that plaintiffs are classified as needy. Social Services Law § 371 (3) (a) defines a "[d]estitute child" as one who, through no neglect on the part of its parents, is "homeless". Social Services Law § 397 (1) requires that aid be provided to families with destitute children when the families are unable to provide the necessary care. There is

ample evidence in the record for us to conclude that the City DSS current policy of only providing cash allowances and information concerning housing availability amounts to the denial of aid to homeless families. The number of such families, approximately 2,500, and the average period of homelessness, seven months to one year, bespeak the dimensions of the problem. In view of the scarcity of decent low-income housing, the City's policy simply ignores the brutal realities of plaintiffs' situation. It contravenes both the letter and spirit of the State's affirmative obligation to aid all its needy residents under NY Constitution, article XVII, § 1. *(Tucker v Toia,* 43 NY2d, at p 9.)

*2. The June 22, 1984 Preliminary Injunction*

Plaintiffs seek a declaration of their right to emergency shelter based upon mandatory, not precatory, statutory and constitutional directives. As exemplified by *Klostermann v Cuomo* (61 NY2d 525, 539 [1984]), such claims present a justiciable controversy even though the activity contemplated on the State's part may be complex and rife with the exercise of discretion.

We are bound to follow the holdings of the Court of Appeals. In light of that court's holdings in *Matter of Bernstein v Toia* (43 NY2d 437 [1977]) and *Tucker v Toia (supra)* that the adequacy of the level of welfare benefits is a matter committed to the discretion of the Legislature, we are unable to afford the plaintiffs complete and meaningful relief. The inability of courts to set even minimum standards for meeting "the legitimate needs of each recipient" *(see, Matter of Bernstein v Toia, supra,* at p 449) upon the failure of the Legislature to do so is discouraging, saddening, and disheartening. When thousands of children are put at risk in their physical and mental health, and subject to inevitable emotional scarring, because of the failure of City and State officials to provide emergency shelter for them which meets minimum standards of decency and habitability, it is time for the Court of Appeals to reexamine and, hopefully, change its prior holdings in this area. The lives and characters of the young are too precious to be dealt with in a way justified, as argued, on the ground that the government's efforts are more than token. They may be more than token, but they are inadequate. On this record and on the authority of *Matter of Bernstein v Toia (supra),* we reluctantly conclude that Special Term erred in invoking its equitable powers to compel compliance with certain reasonable minimal standards.

In *Matter of Bernstein v Toia (supra)*, petitioners contended that NY Constitution article XVII obligated the State to provide public assistance recipients with individualized shelter grants sufficient to meet rent expenses, rather than flat grants in accordance with a schedule of maximum allowances. The Court of Appeals rejected this contention, holding "We do not read this declaration and precept as a mandate that public assistance must be granted on an individual basis in every instance * * * or indeed as commanding that * * * the State must always meet in full measure all the legitimate needs of each recipient" (43 NY2d, at pp 448-449; *see also, RAM v Blum*, 77 AD2d 278, 280-282 [1st Dept 1980, Fein, J., concurring], citing *Dandridge v Williams*, 397 US 471, 484-485 [1970], and *Jefferson v Hackney*, 406 US 535 [1972]).

The plaintiffs in the present case have persuasively documented the unsafe and squalid conditions prevalent in welfare hotel accommodations, conditions particularly undesirable for young children. On the other hand, the evidence demonstrates that the emergency housing provided by the City "is more than token, and is genuine and meaningful." *(RAM v Blum, supra,* at p 284 [Sandler, J., concurring].) In light of the broad discretion vested in the Legislature, we cannot conclude that plaintiffs are likely to prove that article XVII substantively guarantees minimal physical standards of cleanliness, warmth, space and rudimentary convenience in emergency shelter.

We disagree with Special Term that the October 1983 amendments to 18 NYCRR 352.3, which codified more extensive minimal standards for emergency shelter than those contained in Special Term's interim order, rendered the City's challenge to the preliminary injunction partially moot. An administrative agency only has authority to promulgate rules implementing the statutory mandate. *(Matter of Jones v Berman*, 37 NY2d 42, 53, *supra.)* Although not constitutionally mandated to do so, the State Commissioner clearly had authority to promulgate minimal standards for hotel accommodations consonant with his authority to secure shelter in emergency situations under Social Services Law § 350-j. The issuance of these regulations obviated the need for injunctive relief essentially duplicative in nature.

This same flaw exists in the injunctive relief granting procedural safeguards. The system of procedural safeguards delineated by Special Term duplicates those already set forth,

more extensively, in social services regulations which predated this litigation. (See, e.g., 18 NYCRR 351.8, 355.2, 355.4, 372.5.) As the record reflects only isolated instances, rather than a continuing pattern of violations, broad-based relief was unwarranted. The other injunctive relief granted by Special Term also constituted improper and undue intrusion into the administration of public assistance. Since we vacate the preliminary injunction, we affirm Special Term's determination to deny class certification without reaching the merits.

### 3. The Temporary Restraining Order

■ For similar reasons, we reverse Special Term's order of June 27, 1984, which denied the City's motion to vacate the March 22, 1984 temporary restraining order. This order prohibited transfer of emergency shelter recipients to alternate facilities until notice and an opportunity to be heard were given. The requirement for a hearing before transfer interferes with the newly established State inspection procedures for hotel and motel facilities set forth in 18 NYCRR 352.3 (h). Emergency shelter residents must be transferred when substandard facilities are decertified following inspection. In O'Bannon v Town Ct. Nursing Center (447 US 773, 785-790 [1980]), the United States Supreme Court held that decertification pursuant to State administrative procedure does not entitle the residents of a facility to pretransfer hearings. The City DSS provides notice of transfers and expedited hearings pursuant to 18 NYCRR 355.1 and 358.3, respectively. The additional requirement of a hearing prior to transfer would often effectively preclude relocation since alternative placements would become unavailable pending a hearing.

Contrary to plaintiffs' contention, 18 NYCRR 352.3 (g) (1) does not create an entitlement to continued residency in the emergency shelter of one's choice. It only requires emergency housing placement based upon primary consideration of the needs of children, including educational needs and the minimal disruption of community ties. The procedural protections imposed by Special Term exceeded these concerns and restricted all transfers. Emergency shelter residents do not have a due process right to be housed in any particular neighborhood or type of housing. (See, Caton v Barry, 500 F Supp 45, 53 [DDC 1980].)

### 4. Mass Shelters

■ The plaintiffs "do not seek to compel the use of any one or more particular means of providing shelter for destitute

families with children." In accordance with our recognition of the State's discretion as to the quality of emergency shelter, and on this record, we are unable to disturb Special Term's determination not to compel the closing of mass shelters for homeless families. Parenthetically, we note that on March 19, 1986, the State Commissioner published a notice of proposed rule making in the State Register to amend the social services regulations. (Mar. 19, 1986, at 40.) The proposed amendment would impose a salutary 21-day limit upon the use of mass shelters for homeless families.

While mass shelters are not good environments, the affidavit of Deputy Administrator Jorgan establishes that they afford families food, security, outdoor recreational space, and social services which do not exist at emergency hotel placements. As Special Term noted, the lack of privacy clearly renders such facilities unsuitable for long-term stays. We do not take an overly optimistic view in finding that the shelters constitute a cleaner, more secure, and healthier environment than the hotels and, in some instances, the homes in which plaintiffs previously resided.

Plaintiffs urge that two letters, dated April 19 and June 13, 1984, sent by State DSS Commissioner Cesar Perales to the then City Commissioner James Krauskopf, which they term "directives", enunciate State policy against the use of mass shelters. These letters neither enunciate State policy nor constitute binding directives. When the State Commissioner adopts a broad-based policy which must be implemented at the local level, he ensures compliance by promulgating regulations or formal administrative directives. Moreover, it appears that the State DSS disapproval of the facility in Roberto Clemente State Park was based upon its prior designation of that facility for community use and its forthcoming regulations restricting the use of mass shelters.

MATTER OF FULTON V KOCH

■ We modify Special Term's order in *Matter of Fulton v Koch* to dismiss the proceeding as against the respondent State Commissioner. His cross motion to dismiss the petition should have been granted since injunctive relief was inappropriate against him. Social Services Law § 62 places primary responsibility upon the local social services agencies for the delivery of services and assistance to needy families. *(See, Matter of Toia v Regan,* 54 AD2d 46, 50 [4th Dept 1976], *affd* 40 NY2d 837 [1976].)* The State DSS, in contrast, is responsible

for supervision and reimbursement for the various State-funded programs of public assistance. Only the City DSS is the relevant party here, because it alone is accountable for the direct payment of actual transportation expenses incurred by or for relocation of homeless families. Contrary to the contention of the City DSS, this controversy is not moot. The City's failure, either to rehouse families in the area of their children's schools, or provide an adequate transportation allowance to cover the expense of commuting to school for children until they receive a transportation pass as well as for the parents of children too young to travel alone, presents an ongoing problem of public importance which is properly entertainable. *(Matter of Jones v Berman,* 37 NY2d, at p 57.)

■ Under NY Constitution, article XI, § 1 and Education Law article 65, the State must provide free education to all children over age five. Compulsory attendance on a full-time basis is required, with exceptions not here relevant. (Education Law § 3205 [1].) Education Law § 3209 squarely places responsibility upon public welfare officials in local social services districts to provide indigent children with suitable clothing, shoes, books, food and other necessaries to enable them to attend school. *(See also,* Social Services Law § 397 [1] [c].) Funds for school transportation are a necessity under the meaning of these provisions. In our view, these statutes clearly obligate City DSS to provide actual transportation expenses, both for children until they obtain transportation passes from the Board of Education, and for the parents of young children who must be accompanied to school.

We agree with Special Term that the recently adopted City DSS policy of providing a flat travel allowance of $18 per week for parents is inadequate. In many instances, the parents of children who reside in emergency shelters must travel through more than one fare zone each day. It makes no provision for children until their receipt of a transportation pass from the Board of Education. A flat grant forces these families to make an impossible choice between adequate nourishment and education. This policy is unconstitutional in that it deprives indigent children of the right to free education and amounts to a refusal to aid needy children. *(See, Tucker v Toia,* 43 NY2d, at p 8.)

Contrary to respondents' contentions, Social Services Law § 350-j and its implementing regulation, 18 NYCRR 372.4 (d), also mandate the payment of transportation allowances for eligible families residing in emergency shelter. The State

Commissioner's interpretation of section 350-j and 18 NYCRR 372.4 (d) as only authorizing benefits on a case-by-case basis cannot be sustained since it is irrational and unreasonable. As the EAF program concededly authorizes the subject benefits for eligible families in emergency situations, these benefits should be administered, like the emergency shelter benefits to which they relate, on a mandatory basis. (42 USC § 602 [a] [1]; *see, Quern v Mandley,* 436 US 725, 741-742, *supra.)* The State Commissioner's argument that ad hoc determinations distinct from the initial EAF eligibility determination are necessary is not persuasive. Homeless families who have met the test of eligibility for emergency shelter under the EAF program are automatically entitled to a transportation allowance if they have been relocated at a distance from their former communities and their children's schools. Special Term only recognized and declared petitioners' substantive right to reimbursement for actual transportation expenses. The court neither usurped the municipal respondents' adjudicatory authority nor bypassed the eligibility criteria for the EAF program.

We reverse Special Term's determination granting class certification. Class certification is superfluous where, as here, the record does not evidence any unwillingness on the part of respondent government official to comply with and apply court rulings equally to all persons similarly situated. *(Williams v Blum,* 93 AD2d 755 [1st Dept 1983], *lv dismissed* 61 NY2d 606, 905 [1984].)

Consequently, the order of the Supreme Court, New York County (Greenfield, J.), entered June 27, 1984 in *McCain v Koch* which (1) granted the motion of plaintiffs Yvonne McCain *et al.* for a preliminary injunction requiring the New York City Departments of Social Services and of Housing, Preservation and Development, when providing emergency housing for homeless families with children, to (a) assure insofar as practicable that such housing meets certain minimal standards of sanitation, safety, and decency suitable for young children, including placement in light of educational needs; (b) afford emergency shelter recipients with timely and adequate notice of any proposed termination, and the opportunity to contest termination at a hearing; (c) designate an individual to facilitate implementation of the order; and require the State and City Departments of Social Services to provide other public assistance benefits to emergency shelter recipients without interruption to the extent practicable, and (2) denied the motion of plaintiffs McCain *et al.* for class

certification, should be modified, on the law, the motion for a preliminary injunction should be denied and the injunction vacated, and, as so modified, should otherwise be affirmed, without costs.

Order of the Supreme Court, New York County (Greenfield, J.), entered June 27, 1984, which denied the municipal defendants' motion to vacate the temporary restraining order (Greenfield, J.), entered March 22, 1984, prohibiting transfer to alternate shelter locations absent adequate notice and an opportunity to be heard, should be reversed, on the law, and the motion to vacate should be granted, without costs.

Order of the Supreme Court, New York County (Greenfield, J.), entered November 9, 1984, which denied the motion of proposed plaintiffs-intervenors Carolyn Lee *et al.* for intervention and denied the motion of plaintiffs and proposed plaintiffs-intervenors for a preliminary injunction against placing homeless families with children in mass shelters, should be affirmed, without costs.

Order of the Supreme Court, New York County (Myers, J.), entered May 30, 1985, which denied the motion of proposed plaintiffs-intervenors Linda James and Ronald Wright for intervention and a preliminary injunction barring denial of emergency shelter to eligible homeless families with children, should be reversed, on the law, the facts, and in the exercise of discretion, and the motions should be granted, without costs.

Order of the Supreme Court, New York County (Greenfield, J.), entered June 29, 1984, in *Matter of Fulton v Koch* which granted petitioners' motion for class certification and a preliminary injunction to the extent of directing respondent State and City Commissioners of Social Services to provide the parent of each school-age child who needs accompaniment to and from school, a transportation allowance, and to provide each such child with such an allowance until the Board of Education provides such child with a transportation pass and denied respondents' cross motions to dismiss the proceeding, should be modified, on the law, the motion for class certification should be denied, the cross motion of the respondent State Commissioner to dismiss the petition should be granted and the proceeding should be dismissed against him, and, as so modified, should otherwise be affirmed, without costs.

KUPFERMAN, J. P., SULLIVAN, ROSS and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on June

27, 1984, which granted plaintiffs' (McCain *et al.*) motion for a preliminary injunction, unanimously modified, on the law, the motion for a preliminary injunction denied and the injunction vacated, and as so modified, otherwise affirmed, without costs and without disbursements; the order of said court entered on June 27, 1984, which denied the municipal defendants' motion to vacate the temporary restraining order is unanimously reversed, on the law, and the motion to vacate is granted, without costs and without disbursements; and the order of said court entered on November 9, 1984, is unanimously affirmed, without costs and without disbursements; the order of said court entered on May 30, 1985, is unanimously reversed, on the law, the facts, and in the exercise of discretion, and the motion for intervention, class action status and a preliminary injunction is granted, without costs and without disbursements; and the order of said court entered on June 29, 1984, is unanimously modified, on the law, the motion for class certification is denied, the cross motion of the respondent State Commissioner to dismiss the petition is granted and the proceeding is dismissed against him, and, as so modified, the order is affirmed, without costs and without disbursements.