In the Matter of MARIA LAMBOY et al., on Behalf of Themselves, Their Children and All Others Similarly Situated, Respondents, and WILMA ACEVEDO, on Behalf of Herself, Her Children and All Others Similarly Situated, Intervenor-Respondent, v GEORGE GROSS, as Commissioner of the Human Resources Administration of the City of New York and the New York City Department of Social Services, et al., Appellants.

First Department, March 26, 1987

APPEARANCES OF COUNSEL

*Shawn P. Leary* of counsel *(Arthur J. Fried, Steven Banks* and *Alan Rosner* with him on the brief; *Helaine M. Barnett,* attorney), for respondents.

*Maryellen Weinberg* of counsel *(Robert Abrams, Attorney-General,* attorney), for Cesar Perales, appellant.

*Barry P. Schwartz* of counsel *(Leonard Koerner* and *Fay Leoussis* with him on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for municipal appellants.

*Jay Greenfield* of counsel *(Martin Klotz* and *Rachel Pollock* with him on the brief; *Robert M. Hayes* and *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for the Coalition for the Homeless, *amicus curiae.*

## OPINION OF THE COURT

ELLERIN, J.

In *McCain v Koch* (117 AD2d 198), decided May 13, 1986, this court held that homeless families with children are entitled to emergency shelter, on both constitutional and statutory grounds, and a preliminary injunction was granted prohibiting denial of such shelter to eligible homeless families. However, contrary to the position taken by the dissent, our decision in *McCain* is not dispositive of the issue here presented. Although this court in *McCain* did, in general terms, preliminarily bar the city respondents from denying emergency shelter to eligible homeless families, this court also, albeit most reluctantly, reversed the order of Special Term, which directed compliance with certain reasonable minimum standards in the providing of such emergency shelter, upon constraint of controlling Court of Appeals precedent *(Matter of Bernstein v Toia,* 43 NY2d 437; *Tucker v Toia,* 43 NY2d 1)

holding that "the adequacy of the level of welfare benefits is a matter committed to the discretion of the Legislature". *(Mc-Cain v Koch, supra,* at 216.) While leave to appeal to the Court of Appeals has been granted to plaintiffs in the *McCain* case, limited to so much of this court's decision and order as found the Supreme Court to be without power to set reasonable minimum standards where the duly authorized legislative and executive authorities fail to do so, the precise issue before us on this appeal is a much more narrowly circumscribed one, dealing simply with the question of whether the city appellants have properly complied with the standards contained in a State-issued administrative directive delineating the city's obligations to provide emergency housing to homeless persons. Here, there is no question, nor is any raised, as to the authority of the State to promulgate such standards and the focus is upon the meaning of the directive and whether the city appellants have, in fact, complied therewith.

The directive involved, Administrative Directive 83 ADM-47, was issued by the New York State Commissioner of Social Services, on September 20, 1983, while the motion for a preliminary injunction in the *McCain* case *(supra)* was still *sub judice* before Special Term. The directive, applicable State-wide, was addressed to local Commissioners of Social Services in order "to clarify certain responsibilities of local districts to obtain emergency housing for homeless persons". The relevant portions of that directive, which became effective October 1, 1983, are as follows:

"IV. *Required Action*

"A. *Public Assistance*

"1. *Providing Access to Emergency Housing for Homeless Persons*

"a. Local districts must have procedures in place to ensure that homeless persons or persons in imminent danger of becoming homeless can apply for emergency housing whenever such emergency housing is needed * * *

"b. Emergency housing must either be provided immediately if a homeless person is determined eligible or written notice must be given that no assistance will be provided where a homeless person is determined ineligible. A person who is determined ineligible shall be advised of the right to an expedited State Fair Hearing.

"2. *Eligibility Determinations for Homeless Persons*
"b * * * When the individual is determined to be in immediate need and is not determined to be ineligible, an emergency placement shall be made and other needs met."

■ ■ The instant proceeding was commenced in May 1985 by petitioners Lamboy and Serrano, who had intermittently been homeless since 1980, on behalf of themselves and their children, and on behalf of other similarly situated homeless families, seeking, *inter alia,* class certification and injunctive relief prohibiting the municipal appellants from denying the proposed class emergency housing. The petition asserted two bases for such relief—(1) constitutional and statutory grounds similar to those asserted in the *McCain* case, and (2) Administrative Directive 83 ADM-47. However, in moving for preliminary injunctive relief petitioners elected to rely only on the latter ground, which was not before the court in *McCain,* charging the city respondents with repeated violation, on a regular and systematic basis, of the mandate of 83 ADM-47 directing them to provide emergency housing "immediately if a homeless person is determined eligible", and charging the State respondent with failure to properly enforce his own directive. In a very thoughtful, comprehensive and well-reasoned opinion, Special Term (Helen Freedman, J.), concluded that both class action certification and preliminary injunctive relief should be granted (129 Misc 2d 564). We adopt those findings and affirm in all respects.

■ While the decision, of Special Term, rendered in August 1985, is wholly consistent with the conclusions reached by this court some nine months later in *McCain v Koch (supra),* the order entered thereon is substantially broader and more expansive in scope because it is designed to obtain compliance with the definitive standards set forth in the directive. Contrary to the position taken by both appellants, the propriety of the order is amply supported both by the language of 83 ADM-47 itself, as well as by the underlying facts giving rise to this litigation which demonstrate that city respondents have repeatedly failed to properly comply with that directive with respect to eligible homeless persons such as petitioners, and others of the proposed class.

Initially, it must be stressed that there is no question here about the status of any of the petitioners. They are, concededly, all eligible homeless persons within the meaning of 83 ADM-47, and, as such, the directive mandates that "Emergency housing must * * * be provided immediately". The

experiences of the Lamboy/Serrano family, the original petitioners herein, and of others, are instructive both on the issue of whether the city appellants have properly and appropriately responded to the mandate of the directive, as they strenuously argue that they have, and, also, in demonstrating the propriety of the scope of the injunctive relief here granted, the only ground upon which the State appellant appeals.

The Lamboy/Serrano family consists of five persons, including a father, who is brain damaged as a result of a mugging, and three daughters ranging from two to six years of age, one of whom is emotionally handicapped. They have a history of homelessness starting in 1980, followed by a heart wrenching odyssey, graphically described in the record, that includes short periods of respite at the sufferance of friends and relatives, stays at substandard welfare hotels and shelters, frequent separations of the family because of the refusal or inability of various facilities to accommodate them all, and repeated fruitless, and inappropriate, referrals by harried and overworked welfare officials. The proverbial "final straw" occurred when the family sought emergency shelter from the city respondents on May 9, 1985 and no facility that would accommodate all five members of the family was provided. Instead, the family was forced to spend three nights at the Emergency Assistance Unit (EAU) in Manhattan. (EAUs are welfare offices open all through the night after 5:00 P.M. on weekdays and throughout the weekend and holidays for purposes of obtaining emergency shelter for homeless families who have not otherwise been placed.) During the nights spent at the windowless, poorly ventilated EAU office, sleeping accommodations for the parents consisted of plastic chairs, countertops and makeshift beach cots, while their three children were crowded together into a single crib, all within the confines of a brightly fluorescent-lit office setting where noise and activity prevailed throughout the night. Bathing or washing facilities were nonexistent, toilet facilities unspeakable and the food most inadequate. That the family was still relegated to the EAU office on Sunday May 11th, the day ironically designated as "Mother's Day", may well explain the genesis of this lawsuit. The negative impact of such inhumane conditions even on the most stable and secure of persons speaks for itself. How much more devastating an impact such threatening conditions would have upon the lives and health of troubled adults and children with fragile emotional resources is painful to imagine.

Nor was this an isolated case. Wilma Acevedo, the proposed petitioner-intervenor, an epileptic, was faced with similar conditions when she and her young son were forced to sleep at the Bronx EAU office. The record contains numerous case histories detailing the travails of other families who were forced to sleep at EAU offices in lieu of appropriate shelter. Each of those cases is replete with overlapping factual recitations of repeated referrals to, and rejections by, facilities that were already beyond maximum capacity or whose rules precluded acceptance of persons with particular illnesses or conditions such as epilepsy or pregnancy. It is not made clear why the EAU office, before making such referrals, failed to ascertain, by phone or otherwise, the availability of particular accommodations for the persons involved in order to avoid the frustrating and debilitating experience of a family being rejected for shelter in the middle of the night and being forced to return to the EAU office to sleep.

The city appellants do not deny that they regularly provide overnight accommodations at EAU offices for eligible homeless people, and, indeed, the record reflects their acknowledgment that an average of two families each night had been sleeping at these offices for at least several months. It is the city's position that these are hard-to-place families because of their size, or because they include pregnant women, newborn infants or members suffering from physical or emotional difficulties, contagious disease or other such health problems and that by reason of such problems the administrative directive is not violated when these families are provided with interim or "transitory" accommodations at EAU offices while the city seeks emergency housing for them.

The very language of the directive, however, renders such position wholly untenable. 83 ADM-47 expressly states that emergency housing must be "provided immediately" to eligible homeless people. The directive speaks to this requirement with consummate clarity, without the slightest hint of ambiguity and *without exception.* While the word "immediately" may variously be defined, the net of all its definitions is that the action take place "directly" "without delay" and "without the interposition of another agency". *(See, e.g.,* American Heritage Dictionary [2d coll ed 1982].) The urgency contemplated by the word "immediately" is further emphasized by subdivision (1) (a) in the directive which requires that the locality, in the first instance, "have procedures in place to ensure that homeless persons or persons in imminent danger

of becoming homeless can apply for emergency housing" whenever such is needed. It is clear that such provision imposes an obligation upon the locality to appropriately plan ahead so that it will have available, when required, sufficient accommodations for homeless persons and persons in imminent danger of becoming so.

The city's argument that it should be relieved of this "stringent" requirement in the case of "hard-to-place families" is insupportable. That homeless families may consist of five or more persons, and that such families will also include children and/or adults beset by physical, mental or emotional difficulties is hardly unforeseeable or unanticipated. It is well known that a substantial number of those unfortunate enough to be homeless also suffer from such handicaps, which are not atypical but, rather, predictable in this population. The municipal social service agencies are chargeable with knowledge of the problems to be expected in connection with the homeless population for whom they are mandated to provide emergency housing. Further exacerbating the plight of these people, including young children and pregnant women, by subjecting them to the trauma of sleeping in welfare centers, wholly unsuited for that purpose, has been recognized to be harmful in the extreme. The fact that those who remain overnight at these offices frequently suffer from, or, are crowded together with others afflicted by contagious diseases or conditions which make them unwelcome even at the congregate shelters or squalid hotels whose conditions were deplored in the decision in *McCain* (117 AD2d 198, 216-217, *supra),* further demonstrates the inappropriateness of using such offices as "emergency shelter" for any period, no matter how brief.

That the "transitory accommodations" provided at the EAU centers do not constitute the "emergency housing" mandated by 83 ADM-47 would appear to be self-evident. Any doubt, however, is dispelled by looking to the interpretation accorded to that term by the agency that promulgated the directive. It is, of course, well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld. *(Matter of Fineway Supermarkets v State Liq. Auth.,* 48 NY2d 464, 468; *Matter of Howard v Wyman,* 28 NY2d 434, 438.) Here, that position was very clearly stated by the first deputy counsel of the agency in a letter, dated June 19, 1985, which includes the following: "Requiring a family to spend the night

in an emergency assistance unit does not constitute the provision of emergency housing and is not a satisfactory placement under the terms of 83 ADM-47. After discussion with Commissioner Perales and Department staff, I have been asked to reiterate the Department's position that emergency housing for families must be provided in a hotel or motel setting or, for a short initial period, in an emergency shelter for families. A *determination* to place a family in an emergency assistance unit, even for one night, would be in violation of Department policy. However, there will be circumstances which make it necessary for a family to spend the night in an emergency assistance unit. Such circumstances would include emergencies arising from natural disasters (fires, floods, explosions, etc.) and isolated occasions where the local districts' good faith efforts to locate preferable alternative housing are unsuccessful. Reasonable efforts must be made by the local districts to plan for emergency needs and consistent and meaningful attempts by staff at the emergency units must have been made to locate emergency housing for the local district to meet its obligations under the ADM."

That position has been reiterated in the appellant State Commissioner's brief and is further supported by various Fair Hearing decisions of the State Department of Social Services determining that the providing of overnight accommodations at an EAU center, even for one night, did not constitute the proper provision of emergency housing assistance pursuant to Administrative Directive 83 ADM-47. *(See, e.g., Matter of Johnson,* NY St Dept of Soc Servs Fair Hearing No. 0522242N; *Matter of Morales,* NY St Dept of Soc Servs Fair Hearing No. 0872315 L; *Matter of Cordy,* NY St Dept of Soc Servs Fair Hearing No. 0890330 L.)

The seemingly contrary decision in the Fair Hearing in the *Lamboy* case, issued on May 23, 1985, is not only at variance with the clear language of the directive and with the afore-noted stated policy and interpretation of that directive by the agency itself but is, also, in conflict with this court's decision in *McCain v Koch (supra,* at 211), and was properly discounted by Special Term.

In light of the State appellant's promulgation of the directive in the mandatory terms previously discussed, and his agency's interpretation of the directive as proscribing overnight accommodation of homeless persons at a welfare center, his objection to the order entered by Special Term is somewhat puzzling and illogical. The directive, as promulgated by

him, provides for no exception with respect to the locality's obligation to provide "emergency housing—immediately if a homeless person is determined eligible". That the State appellant took into consideration that such "immediate" placement of homeless persons would involve substantial difficulties is evident from the provision requiring that procedures already be in place to "ensure that homeless persons or persons in imminent danger of becoming homeless can apply for emergency housing *whenever such emergency housing is needed".* (Emphasis added.) The order entered by Special Term conforms to the terms of the directive, as written, and as officially interpreted by the State appellant's own agency. In that context, it is difficult to understand the complaint that the order is too broad in that it makes "no provision for *any* exceptions" (as, indeed the directive itself does not) or the request to amend the court's order to provide that the proscription upon families or individuals sleeping in EAUs not apply in the event of natural catastrophes such as fires, power failures, etc. (none of which are here in issue) or the failure of the local social services district to locate suitable alternative housing for an individual family after a good-faith and comprehensive effort to do so. In essence, the State appellant is objecting to an order entered by Special Term which accurately reflects the directive which he promulgated and the official interpretation which his agency has accorded that directive, and he faults the court for failing to expand that order in a manner that would constitute improper judicial legislation by incorporating limitations which appear nowhere in that directive, and which would have the effect of rendering the directive ineffectual and meaningless. Special Term properly rejected the application to so resettle or revise its order.

■ We also find that Special Term's grant of class action status was a proper exercise of its discretion under the circumstances here present. City appellants argue that the action has been rendered moot because the Lamboy/Serrano family and the other proposed petitioners, have already been provided with emergency housing and that future claimants will be adequately protected under stare decisis. However, the questions presented here are of public importance and significance and are likely to recur and yet evade review. *(See, McCain v Koch, supra,* at 211; *Matter of Jones v Berman,* 37 NY2d 42, 57.)* Special Term found that appellants failed to

provide emergency housing to many eligible homeless families even after the entry of orders requiring the provision of such housing, and that there has been a proliferation of such actions in the wake of the worsening of the situation of homeless families. Clearly, a class action is preferable to multiple individual suits, all of which involve a common question of law that predominates, and " 'would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated".' " *(Friar v Vanguard Holding Corp.,* 78 AD2d 83, 97; *see also, Weinberg v Hertz Corp.,* 116 AD2d 1.) Moreover, in light of the continued reluctance of appellants to acknowledge the "immediacy" of the obligation imposed by the directive, to require recourse to individual judicial proceedings would be to ignore the realities of the condition of homeless, destitute families desperately seeking shelter and would not only be oppressively burdensome but would also serve to frustrate the redress of "immediate emergency housing" which the directive is designed to provide.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Helen E. Freedman, J.), dated September 30, 1985 and entered on or about October 2, 1985, which, *inter alia,* denied the motion of the municipal parties to dismiss the petition, granted class certification pursuant to CPLR article 9, and granted petitioners' motion for a preliminary injunction, should be affirmed, without costs.

KUPFERMAN, J. (dissenting). I would reverse and dismiss as moot. The problems of both the petitioners and the intervenor have been taken care of. The only point in a ruling is to set guidelines. Proliferating litigation does not help the situation.

While the prognosis for the future of New York City is optimistic *(see,* Price, *The Good News About New York City,* NY Times Mag, Sept. 28, 1986, at 30 *et seq.),* the matter with regard to the homeless is a burgeoning situation.* We have already determined guidelines in the case of *McCain v Koch* (117 AD2d 198), which is now before the Court of Appeals.

---

* The concern for the problem is also mounting. *See, e.g., Matter of Adams v Cuevas,* 68 NY2d 188, denying an application for a referendum on the subject.

Moreover, the judiciary is ill equipped to resolve the housing shortage.

MURPHY, P. J., MILONAS and ROSENBERGER, JJ., concur with ELLERIN, J.; KUPFERMAN, J., dissents in an opinion.

Order and judgment (one paper), Supreme Court, New York County, entered on or about October 2, 1985, affirmed, without costs and without disbursements.