[601 NYS2d 271]

YVONNE MCCAIN et al., Respondents, v DAVID N. DINKINS, as Mayor of the City of New York, et al., Appellants, et al., Defendant.

In the Matter of MARIA LAMBOY et al., Respondents, v BARBARA J. SABOL, as Administrator of the Human Resources Administration of the City of New York and as Commissioner of the New York City Department of Social Services, et al., Appellants, et al., Defendant.

KAREN SLADE et al., Respondents v DAVID N. DINKINS, as Mayor of the City of New York, et al., Appellants, et al., Defendant.

First Department, July 29, 1993

### APPEARANCES OF COUNSEL

*Elizabeth Dvorkin* of counsel *(Leonard Koerner* and *Alan Krams* with her on the brief; *O. Peter Sherwood, Corporation Counsel* of New York City, attorney), for appellants.

*Steven Banks* of counsel *(Helaine Barnett, Jane Sujen Bock, Andrew W. Ko, Nancy Rosenbloom, Gemma Solimene, Jane E. Booth, Scott A. Rosenberg* and *Leah Hill* with him on the brief; *The Legal Aid Society,* attorneys), for respondents.

### OPINION OF THE COURT

KASSAL, J.

We have repeatedly held that the housing of homeless families at Emergency Assistance Units (EAUs), i.e., welfare offices, violates New York State Administrative Directive 83 ADM-47 requiring that emergency housing be "provided immediately" *(see, Matter of Lamboy v Gross,* 126 AD2d 265). The overnight housing of homeless families at EAUs is intolerable and clearly violates the prior orders of the IAS and this Court in *McCain v Koch* (117 AD2d 198, *revd in part* 70 NY2d 109, *on remand* 136 AD2d 473) and *Matter of Lamboy v Gross (supra).* For several years, the City had been in compliance with these orders, but, more recently, repeated violations have occurred. Indeed, the defendants admit that in the summer and fall of 1992, families had to wait an unacceptably long time, and, sometimes, days in EAUs before they could be placed in emergency housing and that such delays violate the *Lamboy* order. Justice Freedman visited two EAUs in April

1992, and confirmed plaintiffs' findings that the same grim conditions at EAUs recited in this Court's 1987 *Lamboy* decision still exist. Accordingly, the class action brought by affected families for contempt was proper, and the extensive hearings held by the IAS Court established that the municipal defendants have failed to comply with the aforementioned orders.

Pursuant to Judiciary Law § 753, a court may punish for civil contempt where a lawful order of a court, clearly expressing an unequivocal mandate, was in effect. It must appear, with reasonable certainty, that the order has been disobeyed. Furthermore, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party. Finally, prejudice to the right of a party to the litigation must be demonstrated *(Matter of McCormick v Axelrod,* 59 NY2d 574, 583). Here, all of these requirements were established at the hearings, and it is no defense that the municipal defendants were attempting to comply or acting in good faith *(see, Matter of Bonnie H.,* 145 AD2d 830, *lv dismissed* 74 NY2d 650). The City's contention that compliance is impossible is belied by the fact that the City was able to do so in the recent past.

Furthermore, the imposition of nonpunitive sanctions for the civil contempt was proper *(State of New York v Unique Ideas,* 44 NY2d 345). By requiring the City to pay fines to compensate families whose rights were violated by the defendants' contemptuous conduct, the IAS Court neither violated the Judiciary Law nor abused its discretion (Judiciary Law §§ 753, 773). However, we delete the sanction requiring the four individual defendants to spend a night in an EAU for the reason that the only purpose served by such a penalty is to punish these individuals *(see, N. A. Dev. Co. v Jones,* 99 AD2d 238, 240). The implication is simply unrealistic that these public officials are unaware of conditions at EAUs and that confining them to an EAU for a night would force attention to the problem, thereby providing an incentive to comply. Although a sanction designed to coerce compliance with a court's mandate is permissible *(Matter of Department of Envtl. Protection v Department of Envtl. Conservation,* 70 NY2d 233), and the IAS Court indicated that the sanction against the individual defendants was intended to "ensure prospective compliance", practically speaking, we fail to see how an overnight stay in an EAU can serve this purpose. In addition,

the sanction imposed against the individual defendants was unauthorized under the Judiciary Law since a court must impose a fine or imprisonment upon a contempt determination (Judiciary Law § 753 [A]; § 770; *Couture v Garland,* 105 AD2d 1158, 1159, *appeal dismissed* 64 NY2d 1040). Accordingly, we remand the matter to the IAS Court to impose an appropriate sanction against the individual defendants.

In addition, the municipal defendants all had adequate and proper notice, as well as an opportunity to present evidence at the hearings and, thus, their due process rights were clearly not violated.

Finally, it can hardly be disputed that all the parties involved in this contempt proceeding, including defendants, have a vital interest in finding an operative solution to the City's homeless crisis. We especially note that at oral argument, defendants emphasized that they have a proposal in place to address the requirements of our *Lamboy* decision *(supra).* While recognizing that some delay in implementation is inevitable, our determination is without prejudice to the plaintiffs to seek additional appropriate sanctions should the present conditions remain unchanged.

Order, Supreme Court, New York County (Helen E. Freedman, J.), entered on or about November 13, 1992, which, *inter alia,* adjudged the City in civil contempt, affirmed, without costs. Order of the same court entered on or about December 8, 1992, which (1) directed the City to pay fines to homeless families who stayed overnight in an EAU before being given shelter, and (2) found four New York City officials in civil contempt and directed them to appear separately at an Emergency Assistance Unit on one given night until all eligible families applying for emergency shelter before 12:00 midnight at those locations have been placed, modified to vacate the sanction against the individual defendants and to remand to the IAS Court for the imposition of an appropriate sanction, and otherwise affirmed, without costs.

MILONAS, J. (concurring). In imposing sanctions against four of the defendants, Deputy Mayor Norman Steisel, Human Resources Administrator Barbara Sabol, Executive Deputy Commissioner Jeffry Carples and Deputy Commissioner Kenneth Murphy, the Supreme Court stated that:

"The fines imposed on the City will serve as compensation for injured families. However, experience demonstrates that fines are insufficient to ensure prospective compliance. For

that reason, sanctions against the individual defendants [are] appropriate.

"Accordingly, the Court orders Mr. Steisel, Ms. Sabol, Mr. Carples and Mr. Murphy to be present at a separate EAU [Emergency Assistance Unit] on the same day, so that one official is present at each EAU. Each defendant will arrive at the designated EAU before 10:00 P.M. on the date selected, and shall remain at each EAU until all eligible families applying for emergency shelter before 12:00 midnight have been placed."

I join in the vacatur of these sanctions only because it appears that the Judge prescribed them primarily as punishment against City officials for failing to comply with prior court orders. These sanctions represent a drastic attempt to compel the City to discharge its legal obligations and, in my opinion, would be justified only insofar as the purpose for them is to educate rather than simply discipline the public officials involved. Thus, the court could appropriately expect the officials to spend time at an EAU to improve their understanding of what routinely occurs at such places, the distressing conditions existing there and the attendant deleterious effect upon the people forced to seek shelter for the night at a welfare office. Increased comprehension of the damaging human impact caused by the City's nonperformance of the legal mandates would presumably result in an intensification of the officials' efforts to carry out their responsibilities. The Judge could, therefore, require the subject officials to learn more about what happens during overnight stays at welfare offices so that they can devise a better plan for dealing with the situation and then report back to the court. However, to the extent that the Supreme Court applied the sanctions merely as a means of reprimanding the neglectful City officials, they were not warranted, and the court's explanation for their imposition does not indicate otherwise.

KUPFERMAN, J. (concurring in part and dissenting in part). While we agree with the Court's determination that the municipality must be held to the mandate *(see, Heard v Cuomo,* 80 NY2d 684) and that civil contempt may be justified, we do not concur that a contempt citation is proper for the individual defendants *(see, Spallone v United States,* 493 US 265) and would not only modify to eliminate the sanctions as to them, as the Court does, but would also vacate the finding of contempt against them.

SULLIVAN, J., concurs with KASSAL, J.; MILONAS, J., concurs in the opinion of KASSAL J., and in a separate opinion; MURPHY, P. J., and KUPFERMAN, J., concur in part and dissent in part in a separate opinion by KUPFERMAN, J.

Order, Supreme Court, New York County, entered on or about November 13, 1992, affirmed, without costs. Order of the same court entered on or about December 8, 1992, modified to vacate the sanction against the individual defendants and to remand to the IAS Court for the imposition of an appropriate sanction, and otherwise affirmed, without costs.