OPINION OF THE COURT
Carol R. Sherman, J.
On August 5, 2010, the attorney for Michael D. (child) (two years of age) moved by order to show cause to find the Administration for Children’s Services (ACS) and its contract agency, Little Flower Children and Family Services of New York (agency), in civil contempt for disobedience of lawful mandates of the court, pursuant to Judiciary Law § 753 (A) (3), which is made applicable to the Family Court pursuant to Family Court Act § 156. Counsel for the child alleged that ACS and the agency violated orders of this court issued on March 4, 2010 and May 10, 2010, and the violations were calculated to, and did impair, defeat and/or prejudice the rights and/or remedies of the child in the pending child neglect proceeding.
On August 17, 2010, the attorney for the agency, Little Flower Children and Family Services of New York, filed an affirmation in opposition to the order to show cause, and requested that the *505 court deny the motion filed by the Attorney for the Child on the following grounds: that the court did not name the agency by its corporate name in the orders at issue; that the orders were not served upon the agency; that the agency was not a party to the pending neglect proceeding, and, therefore, the agency was not properly before the court; that the orders were not clear and explicit; that the alleged violations were not calculated to nor did they defeat or impede the rights and/or remedies of the child; and the agency “had used its best efforts to comply with the Court’s directions” (agency attorney’s affirmation in opposition to order to show cause, dated Aug. 17, 2010,1Í1I 3, 4, 10, 13, 19).
On September 8, 2010, the attorney for ACS filed an affirmation in opposition to the motion seeking civil contempt and enforcement. ACS requested that the court deny the motion on substantive and procedural grounds. Counsel for ACS stated further that the requested punishment, the imposition of a fine of $250 for each day the court’s orders were violated, exceeds the court’s powers. The attorney for the respondent mother, Tiffany D., did not file a response to the motion.
Neither ACS nor the agency has raised a factual dispute in their written submissions as to compliance with court orders to provide supervision to the foster home in which the child was placed and ensure that mandated early intervention services were provided to the child in the foster home. The court finds that the parties have had a meaningful opportunity to be heard, and, since a factual dispute does not exist, a fact-finding hearing is not required (see Matter of Mosso v Mosso, 6 AD3d 827, 829 [3d Dept 2004] [“due process requires that, in contempt proceedings, the contemnor be afforded ‘an opportunity to be heard at a meaningful time and in a meaningful manner’ ” (citations omitted)]). Accordingly, the court makes the following findings of fact based on the record and the evidence.
On August 7, 2009, ACS filed the instant neglect petition. The petition alleged that the respondent mother failed to provide adequate supervision and guardianship to the child Michael in that she misused a drug or drugs, and was not voluntarily and regularly participating in a rehabilitative program, and that she left the child with his maternal grandmother, who had a prior finding of neglect in which the respondent mother was a subject child and was placed in foster care due to the grandmother’s substance abuse, and that the maternal grandmother admitted to the ACS caseworker that she uses cocaine.
*506 At the court appearance on August 7, 2009, at which an attorney for ACS and an ACS caseworker were present, the court paroled the child to the respondent mother on condition that she enroll and participate consistently in mental health and substance abuse treatment, and not leave the child with the maternal grandmother. The court directed ACS to assist the respondent mother in finding suitable housing, and to refer the child for an early intervention evaluation to assess his need for services.[1] On September 22, 2009, ACS notified the court that it had removed the child from the custody of the respondent mother on September 18, 2009, pursuant to its emergency powers, based on her failure to comply with mental health and drug treatment services. ACS requested the court to remand the child pursuant to Family Court Act §§ 1017 and 1027. The court remanded the child, and ACS placed him in a nonkinship foster home supervised by the agency, Little Flower Children and Family Services of New York. At a court appearance on September 25, 2009, at which the ACS attorney and ACS child protective specialist were present, the court ordered the agency to refer the child for an early intervention evaluation and directed the agency case planner to be present at all court appearances.
On November 5, 2009, respondent mother failed to appear, and the court held the fact-finding hearing by inquest. The agency case planner and the ACS child protective specialist were present at the hearing. The court found, by a preponderance of evidence, that respondent mother failed to provide adequate supervision and guardianship for the child, in that the allegations in the petition were proved, and therefore she had placed him at risk of harm. The court found that the child was a neglected child, as defined in Family Court Act § 1012, and was neglected by respondent mother. The court set January 13, 2010 for the dispositional hearing. On January 13, 2010, the agency case planner failed to appear and failed to submit a written report on the status of services for the child and respondent mother. As a result, the dispositional hearing was adjourned to March 4, 2010. The court issued a warrant, execution stayed, directing the agency case planner to appear on the next court *507 date. The court ordered ACS and the agency to provide the court with a detailed report on February 2, 2010 that included the status of the exploration of kinship foster care, the results of the early intervention evaluation for the child, and a description of services that were in place. The child’s attorney advised the court that the agency had not cooperated in producing the child to meet with her. The court ordered the agency to schedule an appointment so the child could meet with his attorney.
On February 2, 2010, the ACS attorney, the ACS caseworker, and the agency case planner appeared. The agency submitted a court report and the early intervention evaluation of the child that Theracare, Inc. conducted on December 3, 2009. The early intervention evaluation found that the child had severe developmental delays and recommended that the child have a neurological and audiological evaluation. The child was found in need of and was receiving the following services: “Physical Therapy, Occupational Therapy two (2) times a week in the foster home for two 30 minutes [sic]. He also received Speech Therapy and Special Instruction in the foster home twice a week for 30 minutes.” The court ordered the agency to refer the child for evaluations by a pediatric audiologist and pediatric neurologist.
On March 4, 2010, the court held the dispositional hearing and a permanency hearing. The agency case planner and the ACS caseworker were present. Respondent mother did not appear. The court issued the following orders:
• Permanency hearing order dated March 4, 2010, the agency is to “immediately refer case for adoption and filing of [a termination of parental rights petition].”
• Order of disposition dated March 4, 2010. Based on respondent mother’s failure to comply with any services, including drug treatment, parenting, and mental health treatment, and her failure to visit the child on a consistent basis, the court placed the child with the ACS Commissioner until the next permanency hearing date. The court’s order directed: respondent mother to complete drug treatment, parenting skills, individual counseling, a mental health evaluation, and to visit the child on a regular basis; and the agency to ensure that the child receives appropriate early intervention services and that he *508 has neurological and audiological evaluations and all recommendations are followed.
On May 5, 2010, the child’s attorney filed an order to show cause that requested the court to issue the following orders:
“A. Compel ACS and/or its agency to return the child to the foster mother that he was originally placed with on September 18, 2009.
“B. Compel ACS and/or its agency to permit the foster mother to move outside of NYC but within the State of New York with the child.
“C. Assign CASA to facilitate such transition.
“D. Such other and further relief as the Court deems just and proper.”
In the affirmation dated April 19, 2010 in support of the motion, the Attorney for the Child stated that on April 1, 2010, the agency case planner removed the child Michael from the foster mother because she was relocating to Schenectady, New York. The agency case planner did not notify the child’s attorney of the child’s removal and placement in a new foster home. Further, the agency had approved the foster mother’s plan to move upstate and remain a foster parent with the agency for two other foster children in her home. The foster mother had also requested that the child be permitted to remain in her care, and she assured the agency case planner that she would bring the child to New York City for weekly visits with respondent mother. However, the agency denied the foster mother’s request to include the subject child Michael in the move to Schenectady, because he was not a “freed child.” The agency took this position despite the fact that since the child’s entry into foster care on September 18, 2009, respondent mother had visited the child on only three occasions, September 29, 2009, October 14, 2009, and November 18, 2009, and adoption was a concurrent permanency planning goal.[2]
*509 Moreover, the foster mother had provided exemplary care to the child. In the affirmation in support of the motion seeking the child’s return to the foster mother in Schenectady, New York, the Attorney for the Child described the services carried out by the foster parent and the child’s progress as follows:
“The foster mother catered to the child’s every need. She opened her home to speech therapy, swallowing therapy, occupational therapy, and physical therapy while residing in Brooklyn. The child was making progress and was clearly bonding with the foster mother. She made an appointment for a neurological evaluation as the Court ordered and hospitalized the child when he was not responding to nebulizer treatments as a result of his severe asthma.”
On May 10, 2010, the court heard the motion filed by the Attorney for the Child. The agency case planner, the agency’s attorney, the ACS attorney, and a representative from the Court Appointed Special Advocates (CASA) program* *[3] were present in court. The court granted the motion and made the following orders:
(1) Child will be moved to foster mother’s home in Schenectady, New York within 10 days.
(2) Foster mother to bring child to New York City for a visit with biological mother if biological mother requests such a visit. Visits to be once a week.
(3) Agency will ensure that all services are in place for this child in Schenectady.
(4) Agency will immediately determine if there is an intrastate compact request pending on two other children and add this child. If that is completed, agency will immediately take appropriate steps and do an intrastate compact request on this child.
The court assigned the CASA program to assist the agency with the intrastate compact, and ordered the agency to provide by May 28, 2010 a written report as to each and every step it had made to have the child returned to the prior foster mother *510 in Schenectady, New York. No such report was ever submitted to the court.
On August 5, 2010, the Attorney for the Child filed the instant contempt motion. The Attorney for the Child served the moving papers on August 11, 2010. On the return date, August 19, 2010, the agency attorney, agency case planner, and the Attorney for the Child were present. The agency submitted a court report dated August 16, 2010 prepared by the agency case planner. In the court report, the agency case planner stated that he had made efforts to comply with the court’s orders of March 4, 2010 and May 10, 2010, and that he took steps to transfer the child to the foster mother’s home in Schenectady. The child was transferred on or about May 13, 2010. The case planner stated that he had erred in referring the intrastate compact request to Albany County rather than Schenectady County, however he did not give the date he referred the intrastate compact request to either Albany County or Schenectady County. The agency’s court report also stated that a caseworker from the agency’s Homefinding Department was scheduled to visit the Schenectady foster home on August 20, 2010, “to assess the home and inquire about the family,” three months after the child was moved to the home in Schenectady. The agency did not address in that report any efforts it had made to ensure that the child was receiving early intervention services in the foster home in Schenectady. Based on this omission, the court assumes that the child was not receiving any such services.
With regard to the implementation of the goal of adoption, the agency case planner said that he had made a request to the agency’s law firm to file the petition to terminate parental rights, again he did not provide a date of the referral. The agency’s court report also addressed issues and disputes that arose in scheduling visits with both the foster mother and the respondent mother.
On August 19, 2010, the court also received a report from the CASA program regarding the agency’s implementation of the intrastate compact referral for supervision of the foster home. CASA reported that on August 12, 2010, the agency took steps to make the referral to the correct county, Schenectady County. In addition, CASA reported that on or about August 12, 2010, the agency had made a referral to the Schenectady County Public Health Services/Children with Special Needs program to continue the child’s early intervention services.
On September 17, 2010, the agency submitted a new report stating that an agency case planner, assigned to the other foster *511 children in the home, visited the home in June, July and August 2010. The agency admitted that this had just come to the attention of the case planner assigned for Michael. Therefore, there had been no communication within the agency itself as to this home or as to Michael between May 2010 and September 2010, and no services provided. The agency court report also stated that the foster mother had enrolled the child in a preschool program where he will receive early intervention services, and that the intrastate compact referral to a Schenectady County agency for supervision of the foster home had been completed.
Legal Analysis
In this contempt adjudication, the Attorney for the Child has the burden of adhering to the procedural requirements set forth in Judiciary Law article 19 and establishing each of the elements of contempt by the standard of clear and convincing evidence (see Rienzi v Rienzi, 23 AD3d 447, 449 [2d Dept 2005]; Chambers v Old Stone Hill Rd. Assoc., 66 AD3d 944 [2d Dept 2009]). ACS asserted first that the Attorney for the Child failed to adhere to the notice time frames set forth in Judiciary Law § 756. In the instant case, the Attorney for the Child served the order to show cause on August 11, 2010, with a return date of August 19, 2010. ACS alleged improper notice in violation of the provisions of Judiciary Law § 756, in that the period of time between service of the moving papers and the return date in court was less than 10 days. Based on this alleged violation, ACS requested that the court deny the contempt motion in its entirety.
Judiciary Law § 756 outlines procedures for contempt applications and provides:
“The application shall be noticed, heard and determined in accordance with the procedure for a motion on notice in an action in such court, provided, however, that, except as provided in section fifty-two hundred fifty of the civil practice law and rules[4] or unless otherwise ordered by the court, the moving papers shall be served no less than ten and no more than thirty days before the time at which the application is noticed to be heard.”
Here, the contempt proceeding was initiated by an order to show cause, not by notice of motion. The court ordered that the *512 return date be set in less than 10 days, and is authorized by the statute to do so. Contrary to ACS’s claim, the Attorney for the Child did not violate the terms of Judiciary Law § 756.
On the return date, August 19, 2010, the agency attorney was present in court and filed a reply to the order to show cause. ACS did not appear on August 19, 2010 and was given until September 8, 2010 to submit its reply. Under these circumstances, ACS had ample notice of the charges and a sufficient opportunity to respond, prior to the court making any determination (cf. Michael N.G. v Elsa R., 233 AD2d 264, 266 [1st Dept 1996]). Accordingly, the court finds that ACS and the agency were properly served with notice in this matter in accordance with the terms of Judiciary Law § 756, and the court has jurisdiction to adjudicate the instant contempt motion.
Pursuant to the order to show cause filed in this matter, the Attorney for the Child seeks a finding of civil contempt against ACS and the agency based on their failure to comply with the following court orders:
• “Court’s Order of May 10, 2010, which directed the Agency to ensure that all services for the child be put in place in Schenectady . . .
• “Court’s May 10, 2010 Order [to] arrange [to] provide the child Michael D. with speech therapy, swallowing therapy, occupational therapy and physical therapy. In addition, the Court’s Dispositional Order of March 4, 2010, required the Agency to ensure that child receives appropriate Early Intervention Services and that he has neurological and audiological evaluations and all recommendations are followed . . .
• “Court’s March 4, 2010 and May 10, 2010 Order [to] require the biological mother to confirm her intention to exercise visitation 24 hours in advance or her visit is waived . . .
• “Court’s March 4, 2010 order [to] refer the case for adoption by filing a termination of parental rights petition forthwith.”
Family Court Act § 156 governs the contempt powers of the Family Court and provides, pursuant to Judiciary Law article 19, that the Family Court has the power to punish for both criminal and civil contempt, either separately or combined. However, Family Court Act § 156 expressly limits the court from exercising its contempt powers if “a specific punishment or other remedy for such violation is provided in this act or any *513 other law.” The court finds that the alleged failure of ACS and the agency to timely file a termination of parental rights petition pursuant to the court’s order of March 4, 2010 does not constitute grounds for contempt, since an alternate remedy for the violation exists {Matter of Murray, 98 AD2d 93, 97 [1st Dept 1983] [the First Department reversed the Family Court and found that the court vzas barred from holding New York City’s Commissioner of Social Services in contempt for failure to timely initiate proceedings to legally free two children for adoption because the foster parent had statutory authority to initiate such proceedings]).[5]
In regard to the court’s order of May 10, 2010 concerning visitation, the court finds that the child has no statutory remedy for the alleged violations in the Family Court Act or other law. However, in this case, the court finds that neither ACS nor the agency can be held in contempt for failing to “require the biological mother to confirm her intention to exercise visitation 24 hours in advance or her visit is waived.” The court directed visits “if Bio-Mother requests such a visit. Visits to be once a week.” Accordingly, ACS and the agency did not disobey the portion of the court’s order of May 10, 2010 pertaining to visitation. In addition, there are contested issues of fact as to visitation.
Therefore, before the court in this contempt proceeding are alleged violations of the following orders:
(1) Court’s order of disposition dated March 4, 2010, which directed the agency to ensure the continuation of the child’s *514 early intervention services, that the child have a neurological evaluation and audiological evaluation, and that the agency follow all recommendations made by the evaluators.
(2) Court’s order of May 10, 2010, which directed that the child be moved to the home of the foster parent in Schenectady, New York, and which directed ACS and the agency to “immediately” arrange for an “intrastate compact request” for the child in Schenectady, New York, and that the agency ensure that the child receive early intervention services in Schenectady, New York.
The Court of Appeals in McCain v Dinkins (84 NY2d 216, 226 [1994]), delineated the four elements of civil contempt: (1) a lawful order of the court existed that expressed a clear, unequivocal mandate; (2) the charged party had actual knowledge of the existence and contents of the court’s order, although it is not necessary that the order be served upon the party; (3) the order was disobeyed; and (4) such disobedience was calculated to or actually did defeat, impair, impede, and prejudice the rights or remedies of another party to the litigation. Proof of willful disobedience is not an element of civil contempt since the purpose of a civil contempt is to protect the rights of another party to the litigation, and compensate the injured party “for the loss of or interference with the benefits of the mandate” (id.).
The court finds that the Attorney for the Child has presented clear and convincing evidence that meets the first prong of the McCain v Dinkins test, that the court’s orders of March 4, 2010 and May 10, 2010, which directed ACS and the agency to initiate the “intrastate compact,” in order to provide supervision for the home and services to the foster child, and ensure that all early intervention services for the child, including neurological and audiological evaluations, were provided to the child and were in place in Schenectady, New York, were lawful mandates, and that they were clear, specific, and unequivocal.
Here, the agency case planner and the ACS caseworker had joint responsibility for “assessing the need for, providing or arranging for, coordinating and evaluating the provision of services to” the child Michael, the respondent mother and the foster mother (18 NYCRR 441.21 [b] [1]). To fulfill this mission, federal[6] and state standards and regulations require ACS caseworkers and agency case planners to have regular face-to- *515 face contact with children under their care. New York State regulations require that at minimum the case planner or caseworker have face-to-face contact with the child once a month after the first 30 days of placement, and within every 90 days, at least two of the monthly contacts must occur at the child’s placement location (18 NYCRR 441.21 [c] [2]). In addition, the casework staff must contact the child’s foster parent at least monthly, and, every 90 days, at least one of the monthly contacts must occur at the child’s placement location (18 NYCRR 441.21 [d] [2]). Further, casework staff must record services, contacts, visits, interviews, and information concerning the child, his parents and relatives, his foster parents, and the foster placement in progress notes (18 NYCRR 441.21 [e]).
When children are placed in foster homes that are at a great distance geographically from their county of residence, as is the case here, an “intrastate compact” request is made to the new county of residence to ensure that face-to-face visits with the child and the foster parent will continue to occur, at least on a monthly basis. Therefore, in addition to their duty to comply with the court’s orders, ACS and Little Flower Children and Family Services of New York were mandated by federal and state laws to visit and supervise or ensure visits and supervision of this foster home and the child, Michael.
In addition, ACS and the agency had a separate duty to make a referral to the Schenectady County Public Health Services/ Children with Special Needs to ensure that the child’s early intervention services were not disrupted. These duties were established pursuant to the Keeping Children and Families Safe Act of 2003 (42 USC § 5101 et seq. [the Child Abuse Prevention and Treatment Act], as amended by Pub L 108-36, 117 US Stat 800), which mandated that states establish standards and procedures for the referral of young children to early intervention services. New York State’s requirements are set forth in title II-A of article 25 of the Public Health Law. When Michael moved to Schenectady, New York, both ACS and the agency had a duty to inform the Schenectady County Public Health Department of the child’s current location and the services that would be required. Thereafter, Schenectady County became responsible for delivering speech therapy, occupational therapy and physical therapy to the child in the foster home, and the City of New York retained responsibility for the local share of approved costs *516 of the early intervention services through Medicaid or the parent’s private health insurance plan (Public Health Law § 2558). Accordingly, the court’s orders of May 10, 2010 that directed ACS and the agency to initiate the “intrastate compact” and ensure that all services for the child were in place in Schenectady, New York, and the court’s order of disposition dated March 4, 2010 directing the agency and ACS to ensure the continuation of the child’s early intervention services, were lawful mandates. And these orders meet statutory and case law requirements to establish the first element of civil contempt (see Matter of Commissioner of Social Servs. of Erie County [Honan], 67 AD2d 815 [4th Dept 1979]).
As to the second element of civil contempt, whether ACS and the agency had actual knowledge of the court’s lawful mandates, the court finds no merit in the agency’s arguments that the court is without power to find the agency in contempt because the court failed to use the agency’s corporate name in the orders of March 4, 2010 and May 10, 2010; that the orders were not served upon the agency; and that the agency was not a party to the pending neglect proceeding, and, therefore, the agency was not properly before the court. The attorney for the agency cited no statute or case law in support of these contentions and this court has found none. In this contempt proceeding, proof of personal service of the court’s orders of March 4, 2010 and May 10, 2010 upon the agency and ACS is not necessary. “It is sufficient if, as here, the charged party is shown to have been actually aware of, and disobeyed, a clear and unequivocal court directive” (James W.D. v Sandra C., 44 AD3d 423, 424 [1st Dept 2007], citing Matter of McCormick v Axelrod, 59 NY2d 574, 583 [1983]). Moreover, the statute “ ‘makes explicit that the court’s power extends to any person properly before the court, rather than merely a formal party to the proceeding’ ” (Matter of Murray, 98 AD2d at 96, quoting Mem of Off of Ct Admin in Support of 1975 amendments to Family Ct Act § 156, Bill Jacket, L 1975, ch 496, 1975 NY Legis Ann, at 18).
Here, the court’s orders of March 4, 2010 and May 10, 2010 were clearly directed to the ACS caseworker and agency case planner and the ACS attorney, who were present in court when the orders were issued. Further, pursuant to article 10-A of the Family Court Act, “Permanency Hearings for Children Placed Out of Their Homes,” ACS and the agency had a duty and responsibility to report to the court on the implementation of *517 its orders. Accordingly, the second element of civil contempt has been met in that ACS and the agency had actual knowledge of the existence and contents of the court’s orders of March 4, 2010 and May 10, 2010.
With regard to the third prong of the McCain v Dinkins test, whether the orders were disobeyed, ACS and the agency, based on the agency’s court report dated August 16, 2010, claim that the agency “used its best efforts to comply with the Court’s directions” and therefore should not be held in contempt. The record and evidence show that neither ACS nor the agency made an intrastate compact referral to Schenectady County until after the contempt motion was filed. Further, neither ACS nor the agency took any action to ensure that the child’s early intervention services were in place in the Schenectady foster home until after the filing of the contempt motion, three months after the child was placed in the home. In fact, as of September 17, 2010, the child had still not received early intervention services — although arrangements had finally been made for such services. Further, neither ACS nor Little Flower Children and Family Services of New York has arranged for audiological or neurological evaluations as recommended by the child’s early intervention evaluation dated December 3, 2009.
The fact that ACS and the agency now say that they intended to comply or attempted to comply but erred by making a referral to the wrong municipality, Albany County, does not disavow them of their disobedience to the court’s orders. In a civil contempt proceeding, evidence of the charged party’s act of disobedience, regardless of motive, is sufficient to sustain a finding of contempt. The good faith of the charged party is not a defense in civil contempt (Matter of Bonnie H., 145 AD2d 830 [3d Dept 1988]). In civil contempt,
“[i]ntent or willfulness is not required to hold a party in contempt for disobeying a court order or subpoena . . . ‘rather the mere act of disobedience, regardless of motive, is sufficient to sustain a finding of civil contempt if such disobedience defeats, impairs, impedes or prejudices the rights of a party’ ” (Yalkowsky v Yalkowsky, 93 AD2d 834, 835 [2d Dept 1983]).
Accordingly, the court finds by clear and convincing evidence that ACS and the agency disobeyed the lawful mandates of the court.
The court finds significant evidence of the fourth element of civil contempt that ACS’s and the agency’s disobedience was *518 calculated to and actually has defeated, impaired, impeded, and prejudiced the rights and remedies of the child in the pending neglect proceeding. The key purpose of an article 10 proceeding is to “help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being” (Family Ct Act § 1011). Family Court Act § 1015-a specifically authorizes the court to order services to aid the child, and impose the sanction of civil contempt for violation of the court’s service orders, as follows:
“In any proceeding under this article, the court may order a social services official to provide or arrange for the provision of services or assistance to the child and his or her family to facilitate the protection of the child, the rehabilitation of the family and, as appropriate, the discharge of the child from foster care. Such order shall not include the provision of any service or assistance to the child and his or her family which is not authorized or required to be made available pursuant to the comprehensive annual services program plan then in effect. In any order issued pursuant to this section the court may require a social services official to make periodic progress reports to the court on the implementation of such order. . . . Violation of such order shall be subject to punishment pursuant to section seven hundred fifty-three of the judiciary law [civil contempt].”
Here, the court, through its orders of March 4, 2010 and May 10, 2010, directed ACS and the agency to ensure that: (1) the child, Michael, via the initiation of an intrastate compact request, was visited by a caseworker, based in Schenectady, New York, to assess the child’s health, safety and well-being, oversee the care provided in the foster home, and, as necessary and appropriate, arrange for, coordinate and evaluate services to the child in the foster home; and (2) early intervention services to the child were continued without disruption in Schenectady to assist Michael in vital life activities and aid him in overcoming severe developmental disabilities, as well as arrange for neurological and audiological evaluations. By disobeying the court’s orders and failing to provide or arrange for services for a child with severe developmental delays, ACS and the agency denied to the child, Michael, the aid of the court and defeated, impaired, impeded and prejudiced his rights and remedies in the pending neglect proceeding, and placed his physical, mental and emotional well-being at risk of harm.
*519 Accordingly, the court, having fully considered the record and the evidence, and the written submissions by counsel, including the agency’s court reports dated August 16, 2010 and September 17, 2010, and the CASA report dated August 19, 2010, finds by clear and convincing evidence that the record in this matter reflects contemptuous misconduct by ACS and the agency in direct disregard for the court’s orders. Pursuant to Judiciary Law § 753 (A) (3), the court finds ACS and the agency, Little Flower Children and Family Services of New York, guilty of contempt of court, in having disobeyed the court’s order of disposition of March 4, 2010 and its order of May 10, 2010, by failing to act immediately in making an intrastate compact request to ensure that a caseworker in Schenectady, New York, was assigned to supervise the foster home, visit the child, assess his service needs and progress, and take appropriate action; and by failing to ensure that all early intervention services for the child were in place in the Schenectady foster home, and audiological and neurological evaluations were scheduled and the recommendations of the evaluators followed. Further, the court finds that such disobedience of its lawful mandates by ACS and the agency was calculated to, and actually has impaired, defeated and/or prejudiced the rights and/or remedies of the child in the pending child neglect proceeding.
The Attorney for the Child did not plead monetary loss to the child due to these violations, or fees or costs incurred by the Attorney for the Child in pursuing the instant contempt motion.[7] In such circumstances, Judiciary Law § 773 permits the court to impose only the single sum of $250 as a fine for the contempt (State of New York v Unique Ideas, 44 NY2d 345 [1978]).
In view of the statutory requirements, the court directs ACS and the agency to purchase a United States savings bond or other obligation of the government of the United States, the government of the State of New York, or the government of the City of New York, in the amount of $250, in the name of the child, Michael D. The government bond or other obligation is to mature when the child reaches 21 years of age, and may not be redeemed prior to that time, unless by order of the court. The Attorney for the Child will retain custody of the government *520 bond or other obligation for the child until the child reaches his 21st birthday, and the Attorney for the Child shall have yearly contact with the child. If the Attorney for the Child is unable to perform this duty, she is to present an alternative plan to the court by November 30, 2010. If no alternative plan is presented and/or ordered by this court, ACS and the agency are further directed to deliver the government bond or other obligation to the Attorney for the Child, by no later than December 30, 2010, and file notice of such delivery with the court.
Accordingly, the court holds ACS and the agency, Little Flower Children and Family Services of New York, in civil contempt of court and imposes a fine of $250 upon ACS and the agency, which, as multiple contemnors, they share jointly and severally.

. The New York State Early Intervention Program is part of a national program for infants and toddlers established by the federal Individuals with Disabilities Education Act (20 USC § 1400 et seq.). The New York State Health Department administers the program (Public Health Law § 2540). To be eligible for services, children must be under three years of age and have a confirmed disability or established developmental delay (Public Health Law § 2541 [8] [a]).

. Social Services Law § 384-b (4) (b) provides that the parent’s abandonment of a child during “the period of six months immediately prior to the date on which the petition is filed in the court” is a basis for an order terminating parental rights and committing the guardianship and custody of a child to ACS or an authorized agency. The statute defines a child as abandoned if the parent
“evinces an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency. In the absence of evidence to the contrary, such ability to visit and com-
*509 municate shall be presumed” (Social Services Law § 384-b [5] [a]).

. The Family Court may appoint CASA volunteers to provide assistance to the court regarding children in or at risk of out-of-home placement. The CASA program is not a party to the proceedings but plays a key role “in aiding Family Court efforts to further the health, safety and well-being of children” (Rules of Chief Judge [22 NYCRR] § 44.0).

4. Civil Practice Law and Rules § 5250 applies to the arrest of judgment debtors.

. Foster parents are authorized to institute termination of parental rights proceedings pursuant to Family Court Act § 1089 (d) (2) (viii) (E), which provides that
“[w]here the court finds reasonable cause to believe that grounds for termination of parental rights exist, the court may direct the local social services district or other agency to institute a proceeding to legally free the child for adoption pursuant to section three hundred eighty-four-b of the social services law. Upon a failure by such agency to institute such proceeding within ninety days after entry of such order, the court shall permit the foster parent or parents in whose home the child resides to institute such a proceeding unless the local social services district or other agency, for good cause shown and upon due notice to all the parties to the proceeding, has obtained a modification or extension to such order, or unless the court has reasonable cause to believe that such foster parent or parents would not obtain approval of their petition to adopt the child in a subsequent adoption proceeding.”
Neither ACS nor the agency sought modification of the court’s order of disposition dated March 4, 2010. The agency filed the petition on August 19, 2010.

. The federal Child and Family Services Improvement Act of 2006 (42 USC § 624 [e] [2] [A], as added by Pub L 109-288, § 7, 120 US Stat 1248) sets *515 a national standard that 90% of foster children must have a face-to-face visit on a monthly basis.

. The court appointed the Attorney for the Child pursuant to the provisions of article 18-B of the County Law, “Representation of Persons Accused of Crime or Parties Before the Family Court or Surrogate’s Court,” and the fees and costs associated with the pursuit of the instant contempt motion are reimbursable as outlined in section 722-b of article 18-B.