New York City Hous. Auth. — Seth Low Houses v Ingram (2025 NY Slip Op 51059(U))

[*1]

New York City Hous. Auth. — Seth Low Houses v Ingram

2025 NY Slip Op 51059(U)

Decided on June 27, 2025

Civil Court Of The City Of New York, Kings County

Ortiz, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 27, 2025
Civil Court of the City of New York, Kings County

New York City Housing Authority — Seth Low Houses, Petitioner,

against
Nafeesha Ingram, Sean Johnson, Respondents, 131 Belmont Avenue, Apt. 10H, Brooklyn, NY 11212 "Subject Premises"

Index No. L&T 326154-23/KI

Tatyana Segal, Esq.
New York City Housing Authority 
New York, NY
Attorney for petitioner
Emilio Paesano, Esq.
The Legal Aid Society-Brooklyn Neighborhood Office
Brooklyn, NY 
Attorneys for respondent

Javier E. Ortiz, J.

Recitation, as required by CPLR §2219(a), of the papers considered in the review of this motion:
Papers Numbered
Respondent's Order to Show Cause, along with supporting affirmations, memorandum of law, and exhibits 36-43
Petitioner's Affirmation in Opposition 48
Respondent's Affirmation in Reply, along with exhibits 49-52
Papers considered: (NYSCEF Doc. Nos. 36-43, 48, 49-52)
Before the Court is Respondent's motion for civil contempt pursuant to §§733 and 734 of the Judiciary Law for Petitioner's alleged failure to comply with this Court's order dated May 1, 2025 (hereinafter "May Decision") (NYSCEF Doc. 33). For the foregoing reasons, Respondent's motion is granted in part.
Facts and Procedural History
The New York City Housing Authority-Seth Low Houses (hereinafter "Petitioner") commenced this nonpayment proceeding on August 31, 2023, alleging that NAFEESHA INGRAM (hereinafter "Respondent Ingram" or "Respondent") and SEAN JOHNSON [FN1]
(hereinafter "Respondent Johnson") (collectively "Respondents") owed $12,412.03 in unpaid rent. (NYSCEF Doc. 1). Neither Respondent answered the proceeding within the statutory timeframe, and the Court granted Petitioner a default possessory judgment against both Respondents on June 11, 2024. (NYSCEF Doc. 13). Consequently, Respondents were served with a marshal's notice with an earliest eviction date set for September 6, 2024. (NYSCEF Doc. 14). Upon service of the marshal's notice, Respondent Ingram filed an order to show cause to stay the eviction, and affirmed that she only learned of the proceeding after receipt of the eviction notice and raised a warranty of habitability claim alleging that her "bathroom has been out of order for almost a year, the wall in [her] daughter's room is caving in, lots of mold, broken windows, stove/oven doesn't work [and] holes in the wall." (NYSCEF Doc. 15). The Court signed the order to show cause and made it returnable for September 17, 2024, to afford Respondent Ingram an opportunity to go through the Court's intake process to possibly retain counsel. Respondent Ingram did not appear on the return date and the Court denied the motion on default. (NYSCEF Doc. 16). Respondents then received another notice of eviction, which was again stayed when Respondent Ingram filed a second order to show cause. The Court made the motion returnable on January 7, 2025, (NYSCEF Doc. 18), however Respondent Ingram again failed to appear in court on that date and the motion was denied based on her nonappearance. (NYSCEF. Doc. 19). Respondents then received a third marshal's notice which resulted in their eviction from the subject premises on March 25, 2025, along with the individuals named on the household composition. (NYSCEF Doc. 20).
Respondent's Eviction
On the date of the eviction, Respondent Ingram filed her first post-eviction order to show cause (hereinafter "post-evict"), seeking restoration to the subject premises. On the return date, Respondent Ingram appeared in Court and signed a stipulation with Petitioner wherein the parties agreed that Respondent Ingram would be restored to possession contingent upon the payment of $23,532.89 on or before April 24, 2025. (NYSCEF Doc. 22). The agreed-upon amount also encompassed marshal fees and moving/storage fees for Respondent's personal property. On the stipulated payment deadline, Respondent Ingram filed her second post-evict order to show cause, which was signed by the Court and placed on the calendar for April 28, 2025. (NYSCEF Doc. 23). The Legal Aid Society filed a notice of appearance on behalf of Respondent Ingram on the return date and made an application to adjourn for submission of supplemental papers in support of the pro-se post-evict order to show cause. The Court granted [*2]the application, set a briefing schedule, and adjourned the case to May 16, 2025. (NYSCEF Doc. 25).
In the supplemental affirmation, Respondent Ingram stated that Petitioner and the City Marshal (hereinafter "Marshal Schain") conducted a full eviction, moving the entirety of her personal property to a storage facility in the Bronx. (NYSCEF Doc. 27, at ¶¶ 6-7). Respondent Ingram also informed the Court that her entire family was evicted from the subject premises, including her eighteen-year-old son for whom the Petitioner did not have a judgment or warrant. (Id.). After the eviction, Respondent Ingram stated that her and her children were forced to live with a relative in a two-bedroom apartment, with nine (9) total family members residing together. (Id. at ¶ 8). To alleviate the cramped living quarters, Respondent Ingram represents that she slept outside on the night of April 27, 2025. (Id. at ¶ 9).
The Court's May 1, 2025, Decision
The Court rendered a decision on the second post-evict order to show cause which provided the following relief: 1) restoring Respondent Ingram and her family to the subject premises forthwith pursuant to RPAPL §749(3) and CPLR §2201; 2) providing Respondent Ingram until May 31, 2025, to pay the arrears totaling $23,532.89, along with April and May 2025 rent; and 3) ordering Petitioner to "restore all personal property to the subject premises" on or before May 7, 2025. (NYSCEF Doc. 33). The Court also expressed its concern at Petitioner's "recent trend of evicting occupants who are not named in the petition; not named in the judgment; and not named on the warrant in direct contravention of RPAPL §749(1) and (2).[FN2]
 (Id.) During argument, Petitioner represented that it is their policy to only name the head of household in any nonpayment proceeding which, to their own admission, has the possible effect of evicting individuals over the age of eighteen without due process of law. Lastly, it is worth noting that Respondent Ingram, through counsel, submitted a notice of approval for a one-shot deal for $23,532.89, allegedly leaving her with a rent credit through May 2025. (NYSCEF Doc. 49, at ¶86).
Respondent's Motion for Contempt
Respondent Ingram has now filed the extant motion seeking contempt against Petitioner alleging that they failed to comply with the May Decision, insofar as Petitioner failed to return certain items of Respondent Ingram's personal property. The Court notes that Petitioner has never disputed this allegation, either in their responsive papers or at argument on this motion. (NYSCEF Doc. 38, at ¶¶ 10-12). Of the inventoried property (NYSCEF Docs. 40-41), Petitioner allegedly failed to return mattresses and beds, along with other items, which amount to approximately $1,500 in actual damages (NYSCEF Doc. 37, at ¶ 29). Respondent Ingram represents that as her family are without the mattresses, she is forced to sleep on a twin-sized air bed, along with her two minor children; and her adult son is forced to stay at another address to avoid sleeping on the floor. (NYSCEF Doc. 38, at ¶ 17). Respondent Ingram proffers that her attorney contacted Petitioner on May 6, 2025, to report the missing mattresses and followed-up twice later that day, without receiving any response. (Id. at ¶ 16).
After the Court provided the parties an opportunity to respectively submit opposition and [*3]reply, the motion was fully briefed on May 16, 2025. During argument, counsel for Petitioner did not dispute that the mattresses were missing, but instead suggested Respondent Ingram travel to the Bronx to retrieve the property herself. (Record Time: 10:13:00am-10:15:00am, May 16, 2025).
Discussion
At controversy here is whether the Court should exercise its discretionary power to punish Petitioner for civil contempt in light the alleged disobedience with the Court's May Decision? The Court holds that it should and finds that Petitioner is in civil contempt of the May Decision.
Underlying Contempt Law
Civil contempt requires: 1) a determination that a lawful order of the Court, clearly expressing an unequivocal mandate is in effect; 2) a determination "with reasonable certainty" — essentially meaning proof by clear and convincing evidence — that the contemnor disobeyed that order; 3) that the contemnor knew of the Court's order; and 4) the disobedience defeats, impairs, impedes, or prejudices the rights or remedies of a party. (El-Dehdan v. El-Dehdan, 26 NY3d 19, 29-35 [2015]; Bd. of Dirs. of Windsor Owners Corp. v. Platt, 148 AD3d 645, 646 [1st Dept.], leave to appeal dismissed, 30 NY3d 986 [2017]). Any ambiguity in the Court's mandate should be resolved in favor of the would-be contemnor. (Viacom Outdoor Grp., Inc. v. McClair, 62 AD3d 864, 865 [2nd Dept. 2009]). Here, no such ambiguity is present as Petitioner has failed to address how Respondent has not satisfied these elements of contempt.
Respondent argues that the May Decision expressed an unequivocal mandate to "restore 
all personal property to the subject premises from the storage unit on or before May 7, 2025, at Petitioner's own expense." (NYSCEF Doc. 33) (emphasis added). The Court agrees. Petitioner does not dispute that they failed to restore "all" the personal property, but instead offers reasons for why contempt is procedurally improper. Petitioner's argument can be summarized into three (3) points: 1) Respondent failed to file a notice of claim; 2) Respondent failed to comply with the notice requirements of Judiciary Law §756; and 3) Respondent failed to join necessary parties in their allegations of contempt, vis-à-vis, the marshal and the storage facility. All three (3) arguments are unavailing, and in fact have foregoing supporting precedent to the contrary.
Notice of Claim
Petitioner argues that Respondent Ingram failed to comply with NY Public Housing Law (hereinafter "PHL") §157(1) as they did not file a notice of claim prior to the motion for civil contempt. According to Petitioner, Respondent had an obligation to first give notice of its potential claim for civil contempt prior to moving for such relief. (NYSCEF Doc. 48, at ¶¶¶ 7, 10, 23). This interpretation of the law is specious at best as Petitioner attempts to equate Respondent's motion for contempt to a tort claim. (Id.). This is not a claim sounding in tort. It is an allegation that Petitioner failed to comply with a clear and unequivocal order.
The Court, however, agrees that PHL §157 is a condition precedent to a cause of action against the Housing Authority. (Matter of Felder v City of New York, 53 AD3d 401, 862 N.Y.S.2d 36 [1st Dept. 2008]; J & E Industries of Ossining, Inc. v Peekskill Housing Authority, 128 AD3d 638, 8 N.Y.S.3d 394 [2d Dept 2015]). Although true, the purpose of a notice of claim is to "permit a municipal defendant to investigate the validity of a claim and determine whether it desires to pay or settle the claim without the expense of litigation." (Minott v. N.Y.C. Hous. Auth.-Fort Indep. Houses, 83 Misc 3d 1204(A) [Civ. Ct.]). Here, no such confirmation of validity is needed or required. The parties are already in litigation as Petitioner affirmatively [*4]commenced a summary proceeding against Respondent Ingram alleging nonpayment of rent, which ultimately resulted in her eviction on default; an eviction that this Court already determined did not comply with RPAPL §749(3) as Petitioner executed its warrant against an unnamed adult occupant despite only having a possessory judgment against Respondent. (NYSCEF Doc. 33). To extend Petitioner the courtesy of an investigatory period as a precursor to avoiding litigation would essentially award its failure to comply with the law.
This Court instead finds Respondent's argument compelling in that Petitioner should not have the opportunity to fashion its own remedy or alternatively ignore Respondent's claim because, in the context of civil contempt, it is not for the contemnor to determine the potential damages. (NYSCEF Doc. 49, at ¶ 40). The appropriate resolution in this context is to either to purge civil contempt or appeal the finding that a party defied a court order. (Peters v. Sage Group Assoc., 238 AD2d 123, 123 [2d Dep't 1997]; Midlarsky v. D'Urso, 133 AD2d 616, 617 [2nd Dept. 1987]; In re Hildreth, 28 AD2d 290, 293 [1st Dept. 1967] [Courts retains a large degree of discretion to forge an appropriate punishment for civil contempt and as to conditions on which contempt may be purged]). Even if Petitioner had a "good-faith belief that the order was defective [it] is no reason to disregard it unilaterally."(Peters v Sage Group Assoc., 238 AD2d at 123; see Bell v White, 55 AD3d 1211, 1215, 867 NYS2d 729 [2008]). As such, Respondent has not violated PHL §157(1).
Judiciary Law §756 Notice Requirements
Petitioner further argues that Respondent Ingram failed to comply with the notice requirements of Judiciary Law §756, which provides that,
"The application shall be noticed, heard and determined in accordance with the procedure for a motion on notice in an action in such court, provided, however, that, except as provided in section fifty-two hundred fifty of the civil practice law and rules 
 or unless otherwise ordered by the court, the moving papers shall be served no less than ten and no more than thirty days before the time at which the application is noticed to be heard." (emphasis added). Petitioner is correct that the Court afforded them less than 10 days from the date it signed Respondent's order to show cause to the date the motion was noticed to be heard.[FN3]
Be that as it may, through a plain reading of the statute, it is clear that the Court had every authority to do so. (See Judiciary Law §756).
It is axiomatic that the starting point in any case of statutory interpretation must always be the language itself, giving effect to every word therein to the extent possible. (Matter of Mestecky v. City of NY, 30 NY3d 239, 243 [2017]; Raynor v. Landmark Chrysler, 18 NY3d 48, 56 [2011]; Matter of Sedacca v. Mangano, 18 NY3d 609, 615 [2012] [In matters of statutory interpretation, legislative intent is the "great and controlling principle"]). Here, Respondent's argument regarding statutory interpretation is compelling. Use of the phrase "or unless otherwise ordered by the court" highlights that the drafters of Judiciary Law §756 intended to create an exception regarding the timing of service for motions under this statute. (emphasis added). Thus, there is no violation of Judiciary Law §756 when the Court orders the return date [*5]of a motion for contempt less than 10 days from the date the order to show cause is signed. (Matter of Michael D. [Tiffany D.], 30 Misc 3d 502, 512, [Fam. Ct.]).
Further, Petitioner was not prejudiced by the timeline of the motion as the Court adjourned the proceeding to provide them with an opportunity to submit opposition/responsive papers. (NYSCEF Doc. 47).
Necessary Parties
Petitioner finally argues that Respondent "failed to name necessary parties such as Marshal Schain and the moving company, Deland Moving & Storage Logistics LLC, [hereinafter "Deland"] which effectuated the actual moving of Respondent's belongings on March 25, 2025." (NYSCEF Doc. 48, at ¶12). Petitioner cites to CPLR §1001(a) which provides that a necessary party is one "who ought to be [a party] if complete relief is to be accorded between the persons who are parties to the action or who might be inequitably affected by a judgment in the action." (NYSCEF Doc. 48, at ¶ 13). This argument is without merit.
Deland and Marshal Schain are agents of Petitioner acting at Petitioner's disposal. Petitioner contracted Marshal Schain to complete a 
full eviction, at Petitioner's instruction, and Deland to store Respondent's personal property. (emphasis added). Neither one of those proposed necessary parties have the responsibility to store, post-eviction, the property for a reasonable period of time, or a minimum of 30 days; Petitioner, however, does. (Caldwell v. 928 Gerard Ave. Partners, supra, at 860, citing Wilson v. CRL Mgt., Inc., 14 Misc 3d 231, 232-233 [Rochester City Ct. 2006]). Put simply, the Court made no mention of Marshal Schain or Deland in the May Decision. (NYSCEF Doc. 33). The May Decision only imposes the responsibility on Petitioner to restore Respondent's personal property in its entirety to the subject premises. The notion that complete relief cannot be afforded on this order to show cause without nonparties who acted at Petitioner's behest is misguided. Marshal Schain and Deland are not necessary parties to this motion as neither their past conduct, nor future actions, can undermine a judgment of contempt. (Brodsky v. Selden Sanitary Corp., 78 AD2d 866, 866-67 [2nd Dept. 1980]). 
Contempt Finding, Damages, and Legal Fees
It is undisputed that Petitioner failed to provide an affirmation/affidavit of anyone with personal knowledge regarding the state of Respondent's personal property or whether the allegations of contempt are factually untrue. Petitioner opposition, as stated, is only germane to procedural arguments as to why the Court should not find them in contempt. When the record on motion practice shows no fact dispute as to the elements of contempt, the Court may make a finding of contempt without a hearing. (Martin v. Martin, 163 AD3d 1139, 1141 [3rd Dept. 2018]; Speirs v. Leffer, 246 AD2d 590, 590-91 [2nd Dept. 1998]). A movant for contempt only receives a hearing upon demonstration of "the existence of an issue . . . ." (Id.). Here, as there is a no factual opposition, Respondent's proffered facts are deemed to be admitted. (Kuehne & Nagel, Inc. v. Baiden, 36 NY2d 539, 627 [1975]).
Given that government agencies must still be mindful of their duty to abide by the terms of a court order (see generally McCain v Dinkins, 192 AD2d 217, 219, 601 NYS2d 271 [1993], mod on other grounds 84 NY2d 216, 639 NE2d 1132, 616 NYS2d 335 [1994]), the Court finds that on this record that Petitioner is in contempt of Court.
Although unrebutted, there are still issues of fact as to the valuations provided by Respondent's counsel regarding legal fees and actual damages. Respondent does submit indicia of potential losses by arguing that the "missing mattresses cost . . . roughly $1,500 . . . but Respondent could replace the mattresses with $1,200", (NYSCEF Doc. 37, at ¶ 23), however no [*6]other evidence has been introduced on this claim, and thus a factual question remains. That said, Respondent's interpretation of Judiciary Law §773 is correct in that "counsel fees and other professional fees are properly included in an award to a complainant as 'reasonable and necessary costs and expenses' in pursuing contempt." (Glanzman v. Fischman, 143 AD2d 880 [2nd Dept, 1988]).
In short, this Court deems it premature to make a finding of damages without a hearing,
Accordingly, for the reasons stated above it is:
ORDERED that Respondent's motion is only granted to the extent that the Court finds that Petitioner is in civil contempt; it is further
ORDERED that a daily prospective fine of $85.00 shall be imposed on Petitioner, payable to Respondent in the form of a rent credit, for every day on and after June 27, 2025, that Petitioner does not purge contempt, (Ruesch v. Ruesch, 106 AD3d 976 [App. Div. 2nd Dept.]); it is further
ORDERED that Petitioner may purge both the contempt and the fines by fully complying with the May Decision or tendering the $1,500, representing the alleged actual damages, to Respondent, and upon doing so, either: 1) submit an affirmation of facts by way of a motion, substantiating the alleged purge; or 2) submit a stipulation on terms agreed to by both parties; it is further
ORDERED that the proceeding is adjourned to August 4, 2025, 9:30 AM, Part A, Room 904, for a hearing on actual damages, costs disbursements, and legal fees incurred by the Respondent. 
This constitutes the decision and order of the Court.
Dated: June 27, 2025
Brooklyn, New York
HON. JAVIER E. ORTIZ-J.H.C.

Footnotes

Footnote 1:Sean Johnson has never appeared in this proceeding. According to Respondent, he has removed himself from the household composition and does not live in the subject premises. (NYSCEF Doc. 38, at ¶ 21)

Footnote 2:The Court witnessed no less than six (6) post-evicts in unrelated proceedings, since March 2025, where the Respondents reported that NYCHA and its marshals conducted full evictions of the household, including adult occupants without a judgment and warrant.

Footnote 3:The order to show cause was signed on May 8, 2025, with the motion returnable on May 9, 2025.