OPINION OF THE COURT
DANDREA L. RUHLMANN, J.
Has the Monroe County Department of Human Services proved its defense — an inability to comply with a Family Court’s order (Fam Ct, Monroe County 2013, Kohout, J.) — thus precluding a contempt finding? This court finds petitioner failed to prove such defense.
History
By order to show cause filed April 28, 2014, the Attorney for the Child moved to find petitioner in contempt of court. By orders of Monroe County Family Court (Hon. Joan S. Kohout) entered June 4, 2014, and the New York State Appellate Division, Fourth Department, dated May 8, 2015, the Attorney for the Child met its burden in proving the elements of contempt against petitioner. Nonetheless, the matter was remanded to this court for a hearing to determine whether petitioner could prove its defense.
Andrew B. (DOB: 1996) was a troubled person in need of supervision (PINS) in the care of petitioner who turned 18 years old in 2014 while incarcerated. The day Andrew was released from jail petitioner filed a petition to terminate his placement. The next day petitioner gave Andrew a bus pass to *407 go to the Salvation Army. Andrew lived in shelters and/or jail for approximately the next two months and 10 days. Andrew’s attorney filed a contempt motion on April 28, 2014 and Family Court found petitioner in contempt on Thursday, May 1, 2014. The following Monday, May 5, 2014, a collaborative meeting of highly regarded child welfare professionals was held which resulted in a successful plan. Petitioner devised a specific, expensive, creative plan for Andrew at Hillside Children’s Center on the Monroe Avenue campus (with aftercare services through Villa of Hope). The next day Family Court was informed of the plan for Andrew and petitioner withdrew its still-pending petition to terminate Andrew’s placement in foster care. The Family Court thus vacated its $250 contempt fine.
Andrew B., 4V2 years before, at just age 14, was adjudicated a PINS on June 3, 2010 and'was placed in the care of petitioner. In.early 2012, his permanency hearing goal was changed to what was then independent living but what now is called another planned permanent living arrangement. On December 23, 2013 petitioner agreed to an extension of placement and permanency hearing order extending Andrew’s placement with petitioner for six months until June 23, 2014. Importantly, the Family Court specifically ordered “[Andrew] shall not be discharged from foster care during the term of this order without prior permission of the Court” (respondent’s exhibit B at 22).
Shortly thereafter on January 10, 2014 Andrew was living, for the third time, in the emergency foster home of Connie B. when he allegedly became threatening, was mental hygiene arrested and taken to Strong Memorial Hospital. The next day he was released from the hospital and taken to jail. He was incarcerated from January 11, 2014, until February 26, 2014. He turned 18 during that time. When released from jail, “he was placed at the Salvation Army Booth Haven, he was then transferred to Genesis House due to his age. Salvation Army felt Genesis House would be a more age appropriate setting for him since they house homeless young adults at that shelter” (respondent’s exhibit B at 149 [emphasis added]). Petitioner filed a motion to terminate Andrew’s placement the day he was released from jail (respondent’s exhibit B at 12).
On March 17, 2014, the return date of the motion and first appearance, the Family Court ordered both that petitioner could not house Andrew at Genesis House as it is a temporary shelter and that petitioner plan for Andrew (respondent’s *408 exhibit B at 37-45). On April 11, 2014, the second appearance,the Family Court learned that Andrew remained at Genesis House, and reiterated its directive that petitioner make a plan for Andrew and expected the petitioner “to place Andrew in a certified foster setting. Placement in a shelter is not a certified foster setting, and it is not a discharge plan” (respondent’s exhibit B at 51). Andrew was discharged from Genesis House based upon his behavior, and next went to another shelter, the Center for Youth.
On April 17, 2014, the third appearance,[1] the Family Court approved a two-week home visit for Andrew but emphasized that it was merely a visit and not a trial discharge, and again reiterated “foster care to temporary assistance is not a discharge plan” (respondent’s exhibit B at 64). The visit fell apart after a physical altercation occurred on April 21, 2014, when Andrew’s mother asked him to clean the bathroom sink because her younger children had -made a mess with the toothpaste that Andrew had left out. Andrew’s mother was unwilling to have Andrew home (petitioner’s exhibit 1, mother’s aff). The Irondequoit Town Justice Joseph A. Valentino detained Andrew on April 23, 2014 for a violation of adult probation.
On April 28, 2014, the fourth appearance before Family Court, Andrew’s attorney filed a contempt motion against petitioner for its failure to comply with Family Court’s directive to plan for Andrew (respondent’s exhibit B at 23-36). On that same date, the Family Court specifically ordered petitioner to redouble its efforts with regard to possible residential placements including, inter alia, Berkshire Farm Center Group Home in Canaan, Lincoln Hall and Baker Victory (respondent’s exhibit B at 77-79).
On April 30, 2014, the fifth appearance, the Family Court gave petitioner “until tomorrow to get [the court] a written response [to respondent’s contempt motion]” (respondent’s exhibit B at 95). On May 1, 2014, the sixth appearance, the Family Court issued an oral ruling holding petitioner in contempt, as memorialized in writing on June 4, 2014 (respondent’s exhibit B at 10-11). Andrew remained in jail until May 12, 2014 (after petitioner was found in contempt), and only then was released to Hillside Children’s Center, Monroe Avenue *409 campus (petitioner’s exhibit 6a). The Family Court had imposed a fine of $250 upon petitioner, but vacated the same when petitioner complied. The New York State Supreme Court, Appellate Division, Fourth Department, reversed Family Court’s contempt finding for its failure to conduct a hearing allowing petitioner to present a defense. The Appellate Court further noted that petitioner’s situation changed in January 2014 due to Andrew’s own conduct when he “was arrested after threatening to shoot his foster mother” and thus remanded the case to this court for a hearing on petitioner’s defense (Matter of Andrew B., 128 AD3d 1513 [4th Dept 2015]). This court held the hearing on remand, spanning over five days of testimony.
Inability to Comply
In El-Dehdan v El-Dehdan (114 AD3d 4 [2d Dept 2013], affd 26 NY3d 19 [2015]), relied upon by the New York State Appellate Division, Fourth Department, the Court delineated that once the three elements of contempt are proved — as were proved by clear and convincing evidence before Family Court and affirmed by the Fourth Department — then the burden shifts to the alleged contemnor to offer a defense “such as an inability to comply with the order” (id. at 17). A hearing is required where a factual dispute is raised regarding the existence of a defense.[2]
Here petitioner did not prove its inability to comply with the Family Court’s order. Instead the evidence shows unequivocally that with persistence petitioner could plan for Andrew by placing him in a certified foster care placement within the time frame mandated by the Family Court. By its filing of a petition to terminate placement on February 26, 2014, petitioner indeed highlighted to Family Court its purported inability to both keep Andrew in foster care and to find an appropriate placement for him. From the moment of its filing all parties should have been working towards finding an appropriate placement and/or discharge plan — not discharge to a shelter. The motion to terminate placement itself was still pending at the time of the contempt motion because petitioner was not working fast enough. Petitioner’s motion did not release it from its responsibility for Andrew.
Both supervising caseworker Tammy Powell and caseworker Alexa Arellano testified at the hearing upon remand. This court *410 also admitted into evidence 10 exhibits: petitioner’s exhibits 1, 3, 4 and 9 (all caseworker affidavits), 5 (petitioner’s case notes) and 6a (Monroe County Sheriffs booking summary) and respondent’s exhibits B through E, which constituted the entire record on appeal (and the briefs filed) before the Appellate Division, Fourth Department. The parties further stipulated to lessen the standard of proof from competent evidence to allow for hearsay, if material and relevant (see El-Dehdan, 114 AD3d at 10; Matter of Rosato v Rosato, 21 AD3d 418 [2d Dept 2005]; see also Matter of Crystal A., 11 AD3d 897 [4th Dept 2004] [respondent failed to preserve for review her objection to hearsay testimony, regardless hearsay was admissible at disposition, if material and relevant]).
On February 27, 2014, petitioner gave Andrew a bus pass to go to the Salvation Army shelter. Caseworker Arellano was reassigned to Andrew’s case in or around March 2013. Through Arellano, this court received into evidence an affidavit of caseworker LaTonya Stamps dated March 18, 2014, wherein Ms. Stamps supplied a list of 16 foster homes petitioner contacted to request placement for Andrew but “[a] 11 the homes contacted felt they could not accept Andrew into their homes as they felt they could not safely plan for him” (petitioner’s exhibit 4). The number 16 is deceiving. The first was the home of Connie B., the foster mother who both filed criminal charges against Andrew on or about January 10, 2014, and had an existing order of protection against him. Seven homes contacted, including Connie B.’s, did accept “teen males,” but four accept only “teen females,” one accepts children “ages 0 to 12 years old,” and three of the homes accept “ages 0 to 12 years old, but [have] taken teen placements in the past.” (Id.) By affidavit dated April 10, 2014, Todd Ramos, senior matcher for the YOU Team, averred that he contacted “many of the foster homes who take teenagers into their homes, prior to the court date on 3/17/14 and there were no foster homes willing to take [Andrew]” (petitioner’s exhibit 3). There is no detail as to when petitioner contacted each home. Since Andrew was in care from 2010, petitioner’s failure to clarify when it contacted each foster home constituted insufficient proof of its defense. Petitioner failed to prove that it had timely explored all available foster care home placements for Andrew.
Family Court continually stated that shelters were not an option and specifically sent Andrew home to his mother for a visit, not a trial discharge. That visit did end in conflict. The *411 conflict between Andrew and his mother was not new, nor surprising. Caseworker Arellano acknowledged that most of the therapists and clinicians who have worked with Andrew over the years view him as a traumatized child and expressed concerns about his relationship with his mother. She testified the underlying source of his traumatized childhood was neglect by his mother.
Petitioner’s proof regarding its attempts to identify a residential placement for Andrew also was vague. Caseworker Arellano testified only generally that she too sent referrals to “about five” residential facilities, but did not indicate when. She explained that caseworkers have a very long list of residential placements, some of which petitioner works with more frequently. Petitioner sends by facsimile a “referral packet,” usually containing the child’s educational information, evaluations of the child’s physical and mental health, and summaries of the child’s behavior to chosen agencies.
On cross-examination the caseworker conceded that on January 16, 2014, she told Andrew’s probation officer that she was intending to end his foster care placement. In April 2014 she discussed placement with Andrew, and Hillside at Varick was Andrew’s first and only choice.[3] By letter dated April 8, 2014, Hillside at Varick denied Andrew placement. On remand Ms. Arellano testified that Berkshire Farm Center Group Home said “no” to Andrew but she did not specify when; petitioner too was inexplicit before Family Court about the timing of the Berkshire Farm referral, “As far as checking [in the] last couple weeks if they would take him, I don’t know if we have. We did recently . . . The last four weeks, I would say” (respondent’s exhibit B at 50). Caseworker Arellano conceded that the Irondequoit Town Justice in April 2014 had remanded Andrew to jail simply because he had no place to live.
By letters dated April 29 through 30, 2014, certain facilities did reject Andrew for placement: The William George Agency for Children’s Services, Inc., Lincoln Hall, Berkshire Farm Center in Canaan, Mountain Lake Academy and Wyndham Lawn Home for Children. By telephone call received on April 29, 2014, Baker Victory Services rejected Andrew for placement (respondent’s exhibit E, “exhibit D” therein). Unknown is when petitioner made these specific referrals. Petitioner acted *412 in good faith in making referrals yet, should have done so sooner; regardless, once made, these referrals were not fruitful. Petitioner, however, failed to adduce evidence demonstrating that it had explored all placement options with its contracting residential facilities.
The Fourth Department in reversing Family Court’s contempt finding for its failure to conduct a hearing to allow petitioner to present a defense emphasized that Hillside, “[t]he agency that eventually accepted [Andrew B.] after the finding of contempt [,] had denied acceptance at the time of the motion” (Andrew B., 128 AD3d at 1515). Hillside is a large agency with a myriad of residential treatment placement options at different locations both in and outside Monroe County. True Hillside at Varick located in Romulus, New York did not accept Andrew B. Still the evidence on remand showed petitioner did not explore Hillside’s other placement options.
On remand Tammy Powell testified that she was Arellano’s current casework supervisor but she was not the supervisor when petitioner decided to terminate Andrew’s placement. Casework supervisor Powell testified that the agencies with the largest number of Monroe County youth in residential care are Hillside and Villa. Supervisor Powell called Dave Autovino at Hillside on April 30, 2014, because he had helped her with a difficult placement in the past. Just the day before petitioner, by Powell, made a referral for Andrew to Villa.
Supervisor Powell testified that Dave Autovino was “able to gather key people together and we were able to meet on this fairly quickly.” A meeting was set up at Hillside on May 5, 2014, involving approximately 20 professionals, five of whom worked for petitioner, including Powell’s new supervisor, Jackie Sofia. Together petitioner, Hillside and Villa devised a plan to discharge Andrew to a certified foster care placement. It was a plan tailored just for Andrew. The plan included short-term placement at Hillside with two staff assigned to Andrew 24 hours a day, a care coordinator, a skill builder and then a transition to a community placement like a therapeutic foster home.
When asked why this pivotal meeting was not arranged earlier, for example in January 2014, supervisor Powell answered, “I wasn’t on that unit in January.” Why not then in March when Powell was first assigned as the supervisor, or at least by the first week of April; Powell simply answered, “no, it was not.”
*413 Petitioner had a duty to exhaust all placement options for Andrew. Difficulty in placing a child — in and of itself — is not a defense as by definition a child finding himself at the confluence of the juvenile justice and child welfare systems has demonstrated high needs.
In King v King (124 Misc 2d 946 [Sup Ct, NY County 1984]), the court held that a father may be held in contempt for his failure to have his 13V2-year-old daughter visit with her mother as ordered by the court.
“[Defendant as a father is chargeable with finding a solution to the conflict between the court’s order and his child’s wishes. He has a parental obligation to control and direct his daughter’s activities while she is in his care ... A father may not use his daughter’s wishes to shield him from the consequences of disregarding his duty to obey the court’s lawful mandate” (id. at 949 [citations omitted]).
Likewise, here, petitioner should not use the difficulty in placing Andrew as a shield to following what the law requires, and was chargeable with finding a solution (see Matter of Michael D. [Tiffany D.], 30 Misc 3d 502 [Fam Ct, Bronx County 2010] [Commissioner of Social Services held in contempt for its failure to institute an interstate compact]; Matter of Terry, 151 Misc 2d 48 [Fam Ct, NY County 1991] [New York City Commissioner of Social Services found in civil contempt]).
Family Court found petitioner in contempt on May 1, 2014. Petitioner filed a motion to reconsider that same day. Petitioner was able to comply with Family Court’s directive and placed Andrew in a certified foster care placement after a pivotal meeting was held at Hillside on May 5, 2014. On May 6, 2014, petitioner reported to Family Court that there was a certified foster care placement at Hillside Monroe Avenue campus willing to accept Andrew. The Irondequoit Town Justice released Andrew from the Monroe County Jail to Hillside on May 12, 2014.
Petitioner had to “clearly establish” its inability to comply with the Family Court’s order (Hicks v Feiock, 485 US 624, 638 n 9 [1988]; Turner v Rogers, 564 US 431 [2011]; see also Huber v Marine Midland Bank, 51 F3d 5, 10 [2d Cir 1995]; United States Sec. & Exch. Commn. v Universal Express, Inc., 546 F Supp 2d 132, 134 [SD NY 2008] [civil contemnor must prove an inability to comply “clearly, plainly, and unmistakably”]). Petitioner did not meet its burden.
*414 Once Family Court found petitioner in contempt it set terms for petitioner to purge the finding (see Midlarsky v D’Urso, 133 AD2d 616 [2d Dept 1987]; see also Bell v Bell, 181 AD2d 978 [3d Dept 1992] [a court has broad discretion in determining appropriate conditions upon which a contemnor may purge the contempt]). Family Court gave petitioner “an opportunity to purge the contempt, that is to find a location for Andrew” (respondent’s exhibit B at 124).
On May 6, 2014, petitioner found a certified foster care placement for Andrew. That day Family Court imposed a $250 fine upon petitioner pursuant to Judiciary Law §§ 753, 773 (absent proof of damages the aggrieved party is entitled to $250). With petitioner’s consent Family Court suspended that fine until June 23, 2014, the expiration date of the original December 23, 2013 order. This court finds the $250 sanction a nullity, as Family Court vacated it on or after June 23, 2014.
Note Andrew ultimately was discharged from care on or about August 23, 2014. On November 25, 2015, Andrew moved this court to return him to care pursuant to Family Court Act § 1091, which this court granted over the objection of petitioner. Andrew currently is enrolled and attending Job Corps (a free education and training program that helps young people learn a trade, earn a high school diploma or GED, and find and keep a good job). Andrew’s next permanency hearing is scheduled for July 5, 2016.
Now, therefore, it is adjudged that the Monroe County Department of Human Services failed to prove its inability to comply with the order of Monroe County Family Court (Hon. Joan S. Kohout); and it is further ordered the $250 fine against petitioner is and hereby deemed a nullity.

. April 17, 2014 was also the scheduled, hearing date for termination of placement; however, petitioner chose not to go forward on that date.

. In El-Dehdan, the Court held that despite being offered a hearing and the opportunity to present evidence in support of his defense, defendant failed to do so because he refused to testify.

. When petitioner originally argued before Family Court, the court found the specific residential placements were “not up to Andrew” (respondent’s exhibit B at 78).